## *In re* DOSKER'S ESTATE.

1. Bills and Notes—Indorsement—Waiver of Presentment, Demand, Protest, Notice of Dishonor.

   Indorser's signed waiver of presentment, demand, protest and/or notice of dishonor of note or any of its renewals made it unnecessary to present the note, protest or give notice of dishonor.

2. Same—Indorsement—Fraud—Application of Collateral.

   In proceeding against estate of indorser of a note, who had had ample opportunity to examine renewal notes carefully, indorsement *held*, valid and binding, showing of misrepresentations contrary to written provisions of the notes as to application of collateral being insufficient to sustain claim of fraud.

3. Evidence—Parol Testimony.

   In bank receiver's proceeding against estate of indorser of a note, defendant could not show by parol testimony contemporaneous agreement contradicting express terms of written note.

4. Bills and Notes—Indorsement—Application of Collateral—Estoppel.

   Written agreement of decedent, indorser of note given to a bank, that the bank might apply the collateral as it wished, precluded his estate from complaining that collateral was first applied on maker's otherwise unsecured indebtedness.

5. Same—Indorsement—Application of Collateral.

   If collateral is pledged to secure a number of different notes, one of which is also guaranteed by a surety, in the absence of an agreement to the contrary, the proceeds of the collateral may be applied to the notes not so guaranteed.

6. SAME—APPLICATION OF COLLATERAL—DISCHARGE OF INDORSER.

Bank to whom maker had given several notes, secured by collateral which, even when liquidated by bank and its receiver, was insufficient to discharge all notes including one indorsed by defendant's decedent *held*, not to have misapplied collateral nor discharged indorser where note provided that collateral might be applied toward payment of any or all indebtedness owed by maker to bank.

Appeal from Kent; Brown (William B.), J. Submitted April 8, 1938. (Docket No. 63, Calendar No. 39,983.) Decided June 6, 1938.

In the matter of the estate of Cornelius Dosker, deceased. The receiver of American Home Security Bank filed his claim for sums due on a note as an indorser and for statutory bank stock assessment. Executors objected thereto. From allowance of commissioners on claims for stock assessment only, the receiver appealed to circuit court. Judgment for defendant estate. Plaintiff appeals. Reversed and remanded.

*John M. Dunham* (*Edward C. McCobb*, of counsel), for plaintiff.

*Warner, Norcross & Judd* and *Walter K. Schmidt, Jr.*, for defendant.

BUTZEL, J. Claimant, as receiver of the American Home Security Bank of Grand Rapids, presented a claim to the commissioners on claims in the estate of Cornelius Dosker, deceased. The claim consisted of two parts. One was for stockholder's liability on bank stock owned by Mr. Dosker, for which the estate was held liable. The other, which was denied both by the commissioners on claims and, on appeal, by the circuit court, was based on a note for

$2,500 made by Bert Berghuis on March 10, 1933, and indorsed by decedent.

In October, 1930, Mr. Berghuis was indebted to the Security National Bank of Grand Rapids on a number of notes which were secured by general collateral. The bank demanded further security and Mr. Berghuis obtained Cornelius Dosker, the decedent, as indorser on a $2,500 note running for a period of 90 days. The testimony of Mr. Berghuis, objected to by claimant, was to the effect that, prior to decedent's agreement to indorse, a list of the collateral was shown to decedent and he was told by an officer of the bank that Mr. Berghuis' $2,500 note was secured thereby. Mr. Berghuis testified that decedent stated that he wanted to be protected if the collateral declined in value, in which event the bank was to sell out the collateral, apply the proceeds on the note and thus release decedent; that an officer of the bank stated that it was his opinion that the collateral would increase in value, and decedent asked the officer of the bank to watch the collateral for him.

The original note, dated October 15, 1930, signed by Mr. Berghuis and indorsed by decedent, contained the following language:

"The undersigned has deposited with the said bank as collateral security for the payment of the above note and all other liabilities, absolute or contingent, present or future, of the undersigned to the said bank, the property described below, which collateral with any other collateral hereafter given in substitution therefor, or in addition thereto, on default in payment of any debt secured thereby, the holder is authorized to sell without demand or notice; at public or private sale, and at its option to purchase on such sale. In case of decline in the value of the collateral at any time held for any of

said liabilities, or in case of the debtor's insolvency, the bank shall have the right, in its discretion, to call for additional satisfactory security, and upon failure to furnish the same immediately, may proceed to sell said collateral and apply the proceeds thereon. The bank shall have a lien upon and the right to hold and apply at any time, its own indebtedness or liability to the maker thereof, as security for or payment of any liability due or to become due from the maker thereof. Description of collateral: General collat."

The note became due in 90 days. A renewal note, signed and indorsed by the same parties and containing similar language therein, was given to the bank. The note was thereafter renewed from time to time.

Subsequently, the Security National Bank was merged with two other banks in Grand Rapids into a new banking corporation, the American Home Security Bank, which became the owner of the note. On January 9, 1933, a renewal note was given to the American Home Security Bank. This note was on a new form, and it was stated in the body thereof that the signer pledged described collateral to secure the payment of the note *and of any and all liabilities* of the signer to the holder. Upon maturity of the note or *upon nonpayment of any of the other liabilities* of the signer, the holder was empowered to sell the collateral and to apply the proceeds to the payment of the note or *to any or all of the liabilities* of the signor. Decedent indorsed the note which, immediately above his signature, contained a printed waiver of presentment, demand, protest and/or notice of dishonor of the note or of any renewals. This note was again renewed on March 10, 1933, a similar form being used but without a description of the collateral. Decedent, as indorser, again waived pre-

sentment, demand, et cetera, as in the previous note. This note has never been paid and is the one sued upon. The bank went into the hands of a receiver who has presented this claim against the estate of the indorser.

Previous to the presentment of the claim against the estate, the bank had liquidated some of the collateral and had applied it upon obligations of Mr. Berghuis other than the note sued upon. On May 1, 1933, the bank wrote a letter to Mr. Dosker disclosing that there was due to the bank from Mr. Berghuis, in addition to the $2,500 note, another note of $1,500 with an indorser, and a third in the amount of $2,494, without indorsement. The market value of the collateral held at that time was asserted to be $902.50. The receiver of the bank refuses to credit any of the collateral upon the note indorsed by Mr. Dosker and claims the right to apply it upon the other notes. The lower court held that the proceeds from previous sales of collateral were misapplied and that such misapplication released the indorser. Plaintiff appeals.

Defendant contends that the indorsement was void, because it was secured through fraudulent misrepresentations, and that, in any case, the misapplication of the collateral discharged the indorser. Some claim is also made of discharge because of plaintiff's failure to present the note, protest and give notice, but this is not strongly urged. The printed waiver signed by the indorser made it unnecessary to present the note, protest or give notice of dishonor.

There is no merit to defendant's claim that the indorsement was void because of fraudulent misrepresentations. By the exercise of the slightest powers of observation, it was apparent that the note

first indorsed provided that the collateral pledged secured all of the liabilities of Mr. Berghuis. This note was renewed several times. The last renewal notes provided expressly that the collateral could be applied on any obligation of Mr. Berghuis. There is no claim that Mr. Dosker was prevented from reading the notes. When Mr. Dosker was in Grand Rapids, Mr. Berghuis would bring the renewal notes to him for indorsement. Decedent spent one or more winters in Florida, on which occasions the renewal notes would be mailed to him by Mr. Berghuis, and Mr. Dosker would indorse them and mail them back to Grand Rapids. He thus had every opportunity to examine the notes carefully and would have no right to rely on representations so plainly and obviously contrary to the provisions of the notes. There is no showing of fraud and the indorsement was valid and binding.

The note sued upon is plain and unambiguous. It expressly provides that the bank may apply the collateral on any obligation of Mr. Berghuis. It contained no written agreement to apply the collateral first upon the note indorsed by decedent. Any oral agreement to favor the note indorsed was superseded and contradicted by the written terms of the note subsequently signed. Such oral promises cannot be proved to contradict the express terms of a written note. *Palmer National Bank* v. *Van Doren,* 260 Mich. 310. Since decedent agreed that the bank might apply the collateral as it wished, his estate cannot be heard to complain now.

The law is uniform that if collateral is pledged to secure a number of different notes, one of which is also guaranteed by a surety, in the absence of an agreement to the contrary, the proceeds of the collateral may be applied to notes not so guaranteed.

*Noble* v. *Murphy,* 91 Mich. 653 (30 Am. St. Rep. 507) ; *Union Trust Co.* v. *Detroit Motor Co.,* 117 Mich. 631; *Livermore Falls Trust & Banking Co.* v. *Richmond Manfg. Co.,* 108 Me. 206 (79 Atl. 844) ; *Tolerton & Stetson Co.* v. *Roberts,* 115 Iowa, 474 (88 N. W. 966, 91 Am. St. Rep. 171) ; *Wood* v. *Noyes* (C. C. A.), 279 Fed. 321, certiorari denied, 260 U. S. 732 (43 Sup. Ct. 94) ; *Gaston* v. *Barney,* 11 Ohio St. 506.

The purpose of the bank, in demanding an indorser, was to acquire security for Mr. Berghuis' indebtedness in addition to that it already held. If we accept the defendant's contention, and hold that the bank was obligated to sell the collateral as it began to recede in value and apply it first on the note indorsed, then the bank would obtain no additional benefit from the indorsement it demanded. Under such circumstances, it would have been an idle gesture for the bank to require that indorsement and a mere statement of the claim shows its unsoundness. There is no claim that, if the bank had sold all of the collateral, the proceeds would have been sufficient to discharge all of the three notes. *Melvindale State Bank* v. *Eckfeld,* 283 Mich. 179, does not apply. We hold that there was no misapplication of collateral and no discharge of the indorser.

The order of the circuit court is reversed and the case remanded to the trial court with instructions to allow the claim in full with interest and costs, and to certify such allowance to the probate court. Plaintiff will also recover costs in this court.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.