WILSON LEASING COMPANY v SEAWAY PHARMACAL
CORPORATION

OPINION OF THE COURT

1. GUARANTY—PAYMENTS—APPLICATION OF PAYMENTS.

Payments made by guarantors pursuant to guaranties on two specific leases entered into by a corporation could not be applied to the balance due on two other leases entered into by the corporation because the guarantors are not liable for payment cn leases they did not guarantee.

CONCURRENCE IN PART, DISSENT IN PART BY

R. B. BURNS, P. J.

2. ACCOUNT, ACTION ON—AMOUNT DUE—PRIMA FACIE EVIDENCE—STATUTES.

The failure of a defendant in an action to recover the amount due on an account to file an affidavit of denial in response to the plaintiff's affidavit of amount due on the account did not render the plaintiff's affidavit prima facie evidence of the indebtedness where the plaintiff failed to serve upon the defendant a copy of the account as required by statute (MCLA 600.2145).

3. INTEREST—COMPOUND INTEREST—STATUTES.

A lease which provided that delinquent rent installments bear interest at "the highest lawful contract rate or 1% per month, whichever be the lesser", entitled the lessor to compound interest at an annual rate of 7% on that portion of each past due and unpaid rental installment which was itself a payment of interest, and interest at the rate of 1% per month on that portion of the installments which was not interest (MCLA 438.101).

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 38 Am Jur 2d, Guaranty § 22.
[2] 1 Am Jur 2d, Accounts and Accounting §§ 12, 13, 19.
[3] 45 Am Jur 2d, Interest and Usury §§ 83–86.
[4, 5, 8–10] 68 Am Jur 2d, Secured Transactions § 137.
[7] 38 Am Jur 2d, Guaranty §§ 81–83.

4. SECURED TRANSACTIONS—UNIFORM COMMERCIAL CODE—COLLATERAL
   —DISPOSITION OF COLLATERAL—REASONABLE EXPENSES—UNPAID
   LIABILITY.
   Plaintiffs in contract and tort actions are allowed to recover any
   reasonable financial liability incurred, whether or not actually
   paid at the time of suit; therefore, a requirement by a trial
   court that a secured creditor, in order to recover the reasonable
   expenses of the disposition of collateral, provide proof of pay-
   ment was improper.

5. SECURED TRANSACTIONS—UNIFORM COMMERCIAL CODE—ATTORNEYS'
   FEES—COSTS.
   In an action to recover the amount due on a contract within the
   coverage of article nine of the Uniform Commercial Code, when
   the contract provides for reasonable attorneys' fees pursuant to
   the code, the amount of the attorneys' fees is an element of the
   principal debt; the fees are not "costs" within the meaning of
   statutes which authorize or limit the taxation of costs (MCLA
   440.9540[1] [a]).

6. GUARANTY—PAYMENTS—APPLICATION OF PAYMENTS.
   *Payments made by guarantors of two specific leases entered into*
   *by a corporation could be properly applied to the balance due*
   *on other leases entered into by the corporation where the*
   *payments were made without directions for their application.*

7. GUARANTY—ALTERATION OF DEBT—DISCHARGE OF GUARANTOR—
   MATERIAL ALTERATION.
   Any material alteration of a principal debt or obligation operates
   to completely discharge any guaranty of that debt or obligation
   unless the guarantor consented to the alteration; any alteration
   that increases the debt or obligation or extends the time for
   performance is material.

8. SECURED TRANSACTIONS—UNIFORM COMMERCIAL CODE—COLLATERAL
   —DISPOSITION OF COLLATERAL.
   A debtor is not entitled to completely avoid its obligation to a
   creditor where the creditor disposes of collateral in violation of
   the Uniform Commercial Code; rather, the debtor is entitled to
   recover any loss occasioned by the secured party's failure to
   comply with the appropriate provisions of the code (MCLA
   440.9507[1]).

9. SECURED TRANSACTIONS—UNIFORM COMMERCIAL CODE—COLLATERAL
   —DISPOSITION OF COLLATERAL—REASONABLENESS.
   The Uniform Commercial Code does not require that repossessed
   collateral be disposed of in any particular manner, but only

that the disposition be made in good faith and in a commercially reasonable manner; therefore, the sale of repossessed equipment which was the subject matter of four separate leases as a single unit to a single purchaser was not contrary to the provisions of the code where it was not claimed that the sale was not made in good faith or in a commercially reasonable manner (MCLA 440.1203, 440.9504[3], 440.9507[2]).

10. SECURED TRANSACTIONS—UNIFORM COMMERCIAL CODE—COLLATERAL—DISPOSITION OF COLLATERAL—APPLICATION OF PROCEEDS.

The proceeds from dispositions of distinct units of collateral pledged pursuant to distinct security agreements are to be applied separately; therefore, in a case where repossessed equipment which was the subject matter of four separate leases was sold as a single unit, the court must approximate the portion of the total proceeds attributable to each unit of collateral, and then apply an appropriate amount of the total proceeds to the balances due on each of the leases (MCLA 440.9504[1][b]).

Appeal from Muskegon, James F. Schoener, J. Submitted Division 3 November 6, 1973, at Grand Rapids. (Docket No. 15250.) Decided May 29, 1974.

Complaint by Wilson Leasing Company against Seaway Pharmacal Corporation, L. D. Brubaker, I. W. Caplitz, and John Sullivan for a deficiency judgment after sale of repossessed goods. Judgment for plaintiff. Plaintiff appeals the amount of the judgment; defendants other than Seaway cross appeal. Reversed and remanded with instructions.

*Seymour I. Rosenberg,* for plaintiff.

*Balgooyen, Daniels & Balgooyen, P. C.,* for defendants.

Before: R. B. BURNS, P. J., and DANHOF and O'HARA, JJ.

O'HARA, J. This case was originally assigned to Judge R. B. BURNS for the preparation of the

Court's opinion. He has fully set forth the necessary facts and we agree with his opinion except as to the holding concerning the application of the funds paid over by the individual guarantors of corporate debts.

We do not read *Chris Nelsen & Son, Inc v Shubow,* 374 Mich 403; 132 NW2d 122 (1965), as does our colleague. True, there is language in *Shubow* which tends to obscure its basic decisional holding.

The fact situation in the case at bar is so essentially different from that in *Shubow* that the difference renders the case inapposite—whatever the legal effect of the opinion may be.

In this case the corporate officers personally guaranteed two specific leases. They made certain payments to Wilson pursuant to that guaranty. Wilson applied, as Judge Burns correctly notes, the bulk of these payments to the two guaranteed leases. For some inexplicable reason Wilson applied $777.70 to the balance due on two leases which were not guaranteed. This was totally impermissible. Whatever *Shubow* says about crediting payments made, the application of which is unspecified, it certainly does not say the guarantors can become liable for a payment they did not guarantee. Thus we hold that on remand the trial judge is to credit the $777.70 to the amount due on the two leases which were individually guaranteed.

Subject to the foregoing exception we join in the reversal and remand, and the award of no costs.

Danhof, J., concurred.

R. B. Burns, P. J. *(concurring in part; dissenting in part).* Seaway Pharmacal Corporation (hereinafter Seaway), corporate defendant herein, obtained

numerous pieces of office and manufacturing equipment from Wilson Leasing Company (hereinafter Wilson). The equipment was obtained in four distinct lots, each the subject of a distinct, but identical, five-year lease.[1] The two larger leases were personally guaranteed by the individual defendants herein. All four leases were defaulted. After some extensions and a few payments by two of the guarantors, Wilson took possession of all the equipment, sold it, applied the proceeds to the balance due on each lease, and then brought this action against Seaway and the individual defendants for the deficiency, including expenses and attorneys' fees. The circuit judge, sitting without a jury, entered judgments for Wilson against all defendants, but in amounts considerably less than those sought by Wilson. Wilson appeals, claiming that the judgments are inadequate. The individual defendants, but not Seaway, cross appeal, claiming that the judgment against them is excessive.

The particulars of the leases, guaranties, and transactions at issue herein will be detailed below as pertinent to our discussion and resolution of the several claims of error advanced by the parties:

### The Pleadings

Wilson invokes MCLA 600.2145; MSA 27A.2145, to support its claim that the circuit judge was without authority to enter judgments in any amounts other than those prayed for by Wilson in its complaint. We agree with the circuit judge that the cited statute is inapplicable to the instant case.

---

[1] Since each of the leases contains an option to purchase for a nominal price at the conclusion of the lease term, each of the four leases is a security agreement within the meaning of the Uniform Commercial Code, and, therefore, where appropriate, this case is governed by the UCC. UCC 9-102 and 1-201(37); MCLA 440.9102; MSA 19.9102, and MCLA 440.1201(37); MSA 19.1201(37).

The cited statute provides that, if the plaintiff in an action to recover the amount due upon an open account or an account stated serves upon the defendant, in addition to a copy of the complaint, an affidavit of the amount due on the account, *and* a copy of the account, and if the defendant does not then respond with an affidavit of denial, the plaintiff's affidavit is deemed prima facie evidence of the amount due. Admittedly, defendants herein did not file an affidavit of denial. However, Wilson did not comply with the statute and file a copy of the account. Defendant's failure to file an affidavit of denial did not render Wilson's affidavit prima facie evidence of the indebtedness.[2]

## Interest

Paragraph 18 of each of the leases provided, in part, that "delinquent installments of rent shall bear interest at the highest lawful contract rate or 1% per month, whichever be the lesser". In calculating the deficiency Wilson included in the balances due on the leases interest at the rate of 1% per month on those installments of rent past due and unpaid at the time of disposition; that interest totalled $3,288.04 on the guaranteed leases and $522.55 on the unguaranteed leases. The circuit judge refused to allow such interest, holding that Wilson "has already contracted its interest".

The rentals due on the four leases totalled $79,224.15 to be paid in equal installments over five years. The equipment which was the subject of those leases cost Wilson a total of $52,349.54. Defendants claim that the differential of

---

[2] This opinion should not be read as implicitly holding that MCLA 600.2145; MSA 27A.2145, would control this case but for Wilson's insufficient filings. That issue we need not, and do not, decide.

$19,874.61 was interest and that Wilson should not be allowed to compound interest. The circuit judge agreed with defendants. We do not.

Wilson is entitled to compound interest at an annual rate of 7% on that portion of each past due and unpaid rental installment which was itself a payment of interest. MCLA 438.101; MSA 19.21.

## Expenses

Under UCC 9-504(1)(a)[3] a secured creditor forced to dispose of collateral is entitled to recover the "reasonable expenses" of such disposition. In the instant case the circuit judge allowed Wilson expenses totalling $385, provided proof of payment was filed with the court clerk. Wilson complains here that the requirement of actual payment is improper. We agree.

Plaintiffs in contract and tort actions are allowed to recover any reasonable financial liability incurred, whether or not actually paid at the time of suit, for the liability must eventually be satisfied. *Hoehner v Western Casualty & Surety Co,* 8 Mich App 708, 717–718; 155 NW2d 231, 236 (1967), *lv den,* 380 Mich 758 (1968). We see no reason why the principle of these cases should not apply to actions brought under the UCC.

## Attorney Fees

Each of the leases involved herein contained the following provision: "Should any legal proceedings be instituted by lessor to recover any moneys due or to become due hereunder and/or for possession of any or all of the leased equipment, lessee shall pay a reasonable sum as attorneys' fees". Pursuant

---

[3] MCLA 440.9504(1)(a); MSA 19.9504(1)(a).

to that provision and UCC 9-504(1)(a),[4] Wilson asked the circuit court to award it attorneys' fees in the amount of $10,427.05. The circuit judge refused, ruling that contractual provisions for attorneys' fees cannot be enforced in this state because contrary to public policy. Accordingly, he awarded Wilson only the $50 allowed as taxable costs. That was error. Wilson is entitled to recover reasonable attorneys' fees.

Our Supreme Court has held that, unless authorized by statute or court rule, an agreement to pay a stipulated attorneys' fee is invalid because contrary to public policy. The Court reasoned that fixed sums for attorneys' fees have no necessary relationship to the actual services performed and thus are void as constituting a penalty. See *Bullock v Taylor,* 39 Mich 137, 140; 33 Am Rep 356 (1878); *Kittermaster v Brossard,* 105 Mich 219, 220–221; 63 NW 75, 76 (1895), and cases cited therein. On the other hand, a trust mortgage provision for payment of a reasonable attorney fee was held valid in the case of *Security Trust Co v Solomon,* 241 Mich 52, 54; 216 NW 405 (1927). The Court distinguished *Solomon* from the *Bullock* line of cases, not because the former involved a trust mortgage but because it involved a reasonable fee measured by the fair value of the services rendered. See also *Butzel v Webster Apartments Co,* 112 F2d 362 (CA 6, 1940); *In re Schafer's Bakeries,* 155 F Supp 902, 908–909 (ED Mich, 1957), *lv den,* 249 F2d 448 (CA 6, 1957).

To support their position that Wilson is not entitled to collect attorneys' fees in excess of $50 defendants rely upon those provisions of the Revised Judicature Act which limit the taxation of

---

[4] MCLA 440.9504(1)(a); MSA 19.9504(1)(a), gives priority in the application of proceeds of disposition to reasonable attorneys' fees "to the extent provided for in the agreement and not prohibited by law".

attorneys' fees as costs to those instances "authorized by statute or by court rule", MCLA 600.2401; MSA 27A.2401; MCLA 600.2405(6); MSA 27A.2405(6), and upon their accurate observation that no statute or court rule authorizes taxation of more than $50 in attorneys' fees in a case such as the instant one. That reliance is misplaced, for the limitations of the Revised Judicature Act are not applicable to the instant case. In an action to recover the amount due on a contract within the coverage of article nine of the UCC, when that contract provides for reasonable attorneys' fees pursuant to UCC 9-504(1)(a),[5] the amount of the attorneys' fees is an element of the principal debt; the fees are not "costs" within the meaning of statutes which authorize or limit the taxation of costs. See *Springstead v Crawfordsville State Bank,* 231 US 541, 542; 34 S Ct 195; 58 L Ed 354, 356 (1913); *Federal Land Bank of Berkely v Warner,* 42 Ariz 201, 206; 23 P2d 563, 565 (1933); *Cirimele v Shinazy,* 124 Cal App 2d 46, 53; 268 P2d 210, 214 (1954); *Almand v Almand,* 95 Ga 204, 206; 22 SE 213, 214 (1894); *Parks v Granger,* 96 Miss 503, 506; 51 So 716, 717 (1910); *Letcher v Wrightsman,* 60 Okla 14, 15; 158 P 1152, 1153 (1916); *Lackawanna Thrift & Loan Corp v Kabatchnick,* 145 Pa Super 52, 54; 20 A2d 903, 904 (1941); *Warder, Bushnell & Glessner Co v Raymond,* 7 SD 451, 454; 64 NW 525, 526 (1895); *Altgelt v Harris,* 11 SW 857, 858 (Tex, 1889).

## *Payment by Guarantors*

After Seaway became unable to meet its obligations under the leases at issue, two of the individual guarantors made payments to Wilson. Those

---

[5] MCLA 440.9504(1)(a); MSA 19.9504(1)(a).

payments were made without directions for their application. The great bulk of the payments was applied against the balance due on the two guaranteed leases. However, a total of $777.70 was applied against the balances due on the two leases which were not guaranteed. Defendants herein, the individual guarantors, claim that the payments made by two of them should have been applied exclusively against the balances due on the two leases guaranteed by them, thereby reducing by $777.70 the deficiency assessable against them. This issue was clearly decided in *Chris Nelsen & Son, Inc v Shubow,* 374 Mich 403; 132 NW2d 122 (1965).

In *Shubow* defendants therein, the officers of several corporations, gave their personal notes to secure the debts of their respective corporations. Defendants, in their capacities as guarantors, made substantial payments to plaintiff, the creditor therein. Those payments were made without directions as to how they should be applied. Plaintiff applied the payments first to those debts of the corporations not guaranteed by the corporations' officers and only then to those debts guaranteed by defendants. Defendants therein complained, as do defendants herein, that their payments should have been applied exclusively against the debts guaranteed by them. The Supreme Court disagreed, holding that "[a]bsent advice or instructions with the remittances, plaintiff was entitled to apply the payments on the account or notes as it chose". *Chris Nelsen & Son, Inc v Shubow,* 374 Mich at 407; 132 NW2d at 125.

## Discharge of Guarantors

On January 23, 1968, each of the individual

defendants agreed in writing to "guaranty the prompt payment, at maturity, of * * * all indebtedness * * * incurred * * * [on] Lease No. 1524 entered into * * * on or about Jan. 22, 1968, a copy of which is attached hereto and specifically made a part of this Guaranty". Lease 1524 of January 22, 1968, covered two pieces of equipment with rental aggregating $13,694.94. On March 1, 1968, lease 1524 was amended to include a third piece of equipment, the total rental was increased to $16,824.15, and the term was extended by one month. Since no new guaranties were executed, the individual defendants claimed at trial that the alteration of lease 1524 completely discharged them from their promises to guaranty payment of that lease. The circuit judge limited the individual defendants' liability to the amount of the original lease 1524. All the parties to this appeal claim that the circuit court erred in so doing. The individual defendants renew their claim that the alteration of lease 1524 completely discharged them from their guaranties of that lease. Wilson claims that the circumstances of this case are such that the individual defendants are liable as guarantors for the full amount of lease 1524 as amended. The circuit judge did err; either the individual defendants were completely discharged or they are obligated to make good the full amount of the lease as amended. However, from the record before us we cannot resolve the issue.

Any material alteration of a principal debt or obligation operates to completely discharge any guaranty of that debt or obligation, *Locke v McVean,* 33 Mich 473, 481 (1876); *D M Osborne & Co v Van Houten,* 45 Mich 444, 445–446; 8 NW 77 (1881), unless the guarantor consented to the alteration, *Realty Construction Co v Kennedy,* 234 Mich 490, 495; 208 NW 455 (1926). Any alteration

that increases the debt or obligation or extends the time for performance is material. *Locke v Mc-Vean, supra; D M Osborne & Co v Van Houten, supra.*

There can be no question but that the alteration of lease 1524 was material; the amount of the principal debt was increased by $3,129.09 and the time for performance was extended by a month. The question in this case is whether the individual defendants, all or some of them, consented to the alteration. From some of the documents in the lower court record we note that individual defendant and guarantor John Sullivan was a director of Seaway, as well as the corporation's secretary, and that Dr. Caplitz, another individual defendant and guarantor, was Seaway's treasurer. Lease 1524 may have been amended with the knowledge of the individual defendants, and with their active participation. If such is the case, and if the individual defendants did not advise Wilson that the guaranties of January 23, 1968, would not apply to the amended lease, the individual defendants cannot now avoid the promises made by them and relied upon by Wilson.

## *Disposition of Collateral*

After regaining possession of the equipment which was the subject of the leases at issue herein, Wilson sold it all as a single unit to a single purchaser for a price of $20,500. The individual defendants claim that the sale was contrary to the provisions of the UCC because the collateral was not sold in lots corresponding to the separate lots in which the collateral was first acquired by Seaway, and that, accordingly, Wilson is precluded by the UCC from collecting any deficiency. Both claims are wrong.

Even if a creditor disposes of collateral in violation of the UCC, the debtor is not entitled to completely avoid its obligations to the creditor. Rather, the debtor is entitled to recover "any loss" occasioned by the secured party's failure to comply with the appropriate provisions of the UCC. UCC 9-507(1).[6] The individual defendants have offered no evidence that any loss was suffered by Seaway because of the form of the disposition.

The UCC does not require that repossessed collateral be disposed of in any particular manner. Disposition *"may* be as a unit or in parcels" (emphasis supplied), UCC 9-504(3),[7] but it need not be. The UCC requires only that the disposition be made in good faith and in a commercially reasonable manner. UCC 1-203[8] and 9-504(3).[9] Neither Seaway nor the individual defendants have ever claimed that the sale at issue herein was not made in good faith or in a commercially reasonable manner. Nor is there any evidence in the record to suggest that the sale was not "in conformity with reasonable commercial practices among dealers in the type of property sold". Such a sale is, by statutory definition, "commercially reasonable". UCC 9-507(2).[10]

## Application of Proceeds

Wilson applied the proceeds of the sale first to the balances due on the two leases which were not guaranteed, totally satisfying the obligations on those two leases, and then to the balances due on the two guaranteed and larger leases, leaving a

[6] MCLA 440.9507(1); MSA 19.9507(1).

[7] MCLA 440.9504(3); MSA 19.9504(3).

[8] MCLA 440.1203; MSA 19.1203.

[9] MCLA 440.9504(3); MSA 19.9504(3).

[10] MCLA 440.9507(2); MSA 19.9507(2).

total deficiency on those leases of $29,133.46, exclusive of interest, expenses, and attorneys' fees. Since all of the collateral was sold as a single unit, we do not know the amount of the total proceeds attributable to the sale of the equipment covered by the unguaranteed leases. However, all parties agree that the portion of the proceeds applied to the unguaranteed leases exceeded the share of the total proceeds attributable to the sale of the equipment covered by those two leases. The individual defendants claim that 67% of the proceeds should have been applied against the two guaranteed leases; the value of the two guaranteed leases was 67% of the value of all four leases. Wilson, on the other hand, claims that, in the absence of an agreement to the contrary, it was free to apply the proceeds as it saw fit. We agree with the individual defendants.

The cases cited by Wilson are significantly distinguishable from the instant case. Furthermore, no case has been cited to us, and our research has not located any case, that deals with the precise issue now before us. The instant case does not involve the application of payments, but the application of proceeds from a disposition of the collateral.

Unlike *In re Dosker's Estate,* 284 Mich 597; 280 NW 61 (1938), which involved a single unit of collateral securing all the debts involved therein, the instant case involves four distinct units of collateral, as well as four distinct debts.

After deducting the expenses of disposition, including . attorneys' fees where appropriate, the UCC commands that the proceeds of disposition "be applied * * * to * * * the satisfaction of indebtedness secured by the security interest under

which the disposition is made." UCC 9-504(1)(b).[11] We think it a fair reading of that provision in particular and of the UCC in general that the proceeds from dispositions of distinct units of collateral pledged pursuant to distinct security agreements are to be applied separately. Since each of the security interests secured but one debt, Wilson had no discretion in the application of the proceeds.

## Conclusion

This case is reversed and remanded to the circuit court. That court is to recompute the judgment awarded to Wilson in accord with this opinion and the following instructions:

1. The circuit court is to determine how much, if any, of the rental installments was interest charged for the loan of the purchase money. That portion of the due and unpaid installments determined to be interest shall be awarded interest at the rate of 7% per annum on such portion of those installments due and unpaid at the time of disposition. Interest shall be awarded at the rate of 1% per month on that portion of the installments which was not interest.

2. Wilson is to be awarded expenses of disposition totalling $385, whether or not it can produce proof of payment.

3. Wilson is to be awarded attorneys' fees in such amount as the court deems reasonable for the services rendered in connection with the legal proceedings initiated to reposses the collateral at issue herein and to collect the deficiency. We suggest that the circuit court look to the recent decision in *Lindy Bros Builders, Inc v American*

[11] MCLA 440.9504(1)(b); MSA 19.9504(1)(b).

*Radiator & Standard Sanitary Corp,* 487 F2d 161 (CA 3, 1973).

4. Wilson's application of payments made by the individual guarantors is to be respected.

5. The circuit court is to determine whether the individual guarantors, any or all of them, consented to the alteration of lease 1524. Those guarantors, if any, who consented to the alteration are to be held liable for the full amount of the lease, as amended. Those guarantors, if any, who did not consent to the alteration are to be completely discharged from any liability on lease 1524.

6. The circuit court is to approximate the portion of the total proceeds attributable to each unit of collateral and is then to apply an appropriate amount of the total proceeds to the balances due on each of the leases.

Reversed and remanded. No costs, neither party having prevailed in full.