## TEXACO, INC v CLIFTON

Docket No. 77-5167. Submitted June 6, 1978, at Grand Rapids.—
Decided December 6, 1978. Leave to appeal applied for.

Texaco, Inc., brought a contract action against defendants Rodger
J. Clifton, Harry E. Peterson, Marlene J. Peterson and Jeanette
Clifton based on documents which the defendants executed
guarantying the payment of certain obligations of the Gripe-
Clifton Oil Company, Inc., to Texaco. The Calhoun Circuit
Court, Creighton R. Coleman, J., found defendants Rodger
Clifton and Harry Peterson jointly and severally liable to
Texaco in the amount of $332,679.08 and defendants Marlene
Peterson and Jeanette Clifton jointly with the other defendants
and severally liable to Texaco in the amount of $100,000.
Defendants appeal, claiming they were released from their
guaranties because a material alteration occurred in the princi-
pal contract between Texaco and Gripe-Clifton Oil which ad-
versely affected their duties as guarantors. *Held:*

1. The trial judge's findings were not clearly erroneous in his
conclusion that Texaco was at liberty under the terms of the
contract to observe the mandatory Federal gasoline allocation
regulations without a breach of contract.

2. The enactment of the mandatory program changed the
parties' duties under the terms of the contract but did not
materially alter the terms of the contract and the guarantors
were not released from their obligations.

3. The separate guaranties executed by Mr. Clifton and Mr.
Peterson were not, by their terms, tied to any particular
contract between Texaco and Gripe-Clifton Oil and a change in
the contract did not affect the guarantors' liability.

4. The delivery of gasoline by Texaco was not a condition
precedent to Gripe-Clifton Oil's obligation to repay Texaco; the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 839-841.
[2] 17 Am Jur 2d, Contracts § 240.
[3] 38 Am Jur 2d, Guaranty §§ 73, 74, 81.
[4] 17 Am Jur 2d, Contracts § 339.

language in the contract established just one of the alternate methods of payment open to Gripe-Clifton Oil.

Affirmed.

1. APPEAL AND ERROR—FINDINGS OF FACT—WITHOUT JURY—CLEAR ERROR—COURT RULES.

The findings of fact by a trial court sitting without a jury are to be affirmed on appeal unless they are clearly erroneous (GCR 1963, 517.1).

2. CONTRACTS—INTERPRETATION.

Contracts are to be interpreted so that meaning can be given to all the terms thereof, if possible.

3. CONTRACTS—GUARANTY—CHANGES IN DUTIES—MATERIAL ALTERA-TIONS.

Guarantors were not released from liability on their guaranties due to the enactment of a mandatory Federal gasoline alloca-tion program where the enactment of such program changed the parties' duties under the terms of the contract containing such guaranties but did not materially alter the terms of the contract and where the contract itself provided for the observ-ance of such mandatory regulations.

4. CONTRACTS—ABSOLUTE DEBTS—CONDITIONS PRECEDENT—IMPOSSIBIL-ITY.

A debt evidenced by a contract is due and payable a reasonable time after a condition precedent to the payment of the debt becomes impossible to fulfill where the parties were acknowl-edging a debt absolute upon the signing of the contract.

*Allen, Worth & Hatch,* for plaintiff.

*Kendall MacLeod,* for defendant.

Before: DANHOF, C.J., and V. J. BRENNAN and R. H. CAMPBELL,* JJ.

PER CURIAM. After a nonjury trial, defendants, Rodger Clifton and Harry Peterson, were found jointly and severally liable to plaintiff, Texaco, Inc., in the amount of $332,679.08 and defendants, Mar-lene Peterson and Jeanette Clifton, were found,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

jointly with the other defendants and severally, liable to plaintiff in the amount of $100,000. Defendants' liability was based on documents which they executed guarantying payment of certain obligations of the Gripe-Clifton Oil Company, Inc. (hereinafter, G-C Oil), to Texaco. Defendants appeal as of right claiming that they were released from their guaranties because a material alteration occurred in the principal contract between Texaco and G-C Oil which adversely affected their duties as guarantors.

In a letter dated November 13, 1973, Rodger Clifton made a proposal for an agreement between G-C Oil and Texaco whereby G-C Oil would be reestablished as a distributor of Texaco products. This letter acknowledged that G-C Oil had an outstanding debt to Texaco in the amount of $93,853.43. The proposal, which was accepted by Texaco, stated that Texaco would provide G-C Oil with a maximum of 10,000,000 gallons of gasoline per year and that Texaco would also give G-C Oil $250,000 in product advances and extend to them a $100,000 line of credit. These product advances were to be repaid at a rate of one cent per gallon of gasoline sold to G-C Oil by Texaco during the first two years and at a rate of one and one-quarter cents per gallon of gas sold thereafter. In the proposal, G-C Oil offered to execute two promissory notes to Texaco: one for the outstanding debt and another for the product advances. Guaranties were also to be obtained from the defendants. The proposal also provided:

"It is understood that the actual quantities to be supplied by TEXACO to Clifton under the agreement will be subject at all times to and in *accord with such TEXACO and/or governmental allocation program in effect during the term* of the agreement provided, how-

ever, that any allocation of products to Clifton will be *based upon the gallonage figures set forth in this agreement * * * ."*

On November 14, 1973, G-C Oil and Texaco entered into a written distributor agreement. According to this agreement, Texaco agreed to sell to G-C Oil "in quantities specified from time to time by Purchaser, but * * * not less per year than the minimum quantity nor more per year than the maximum quantity stated below.

|                        | Minimum    | Maximum             |
|------------------------|------------|---------------------|
| Texaco Motor Gasoline  | -0- gals.  | 10,000,000 gals ".  |

The distributor agreement also provided:

"9. In the event Seller's capacity to perform as to all or some of its customers, including Buyer, becomes impractical, in Seller's sole judgment, for any reason whatsoever, Seller shall be relieved of its obligation to perform hereunder and shall not be obligated to Buyer by reason of any delay in performance in whole or in part. Seller shall notify Buyer in writing of its lack of capacity to perform by mail addressed to Buyer. In such notification Seller shall advise Buyer the quantities, if any, Seller will be able to supply Buyer in the foreseeable future. Within ten (10) days thereafter, Buyer shall notify Seller whether it wishes to purchase such reduced quantities where Seller has advised that reduced quantities are available, otherwise this agreement shall terminate.

*    *    *

"11. If Seller determines that it is unable to perform hereunder by reason of any federal, state or local law or regulation, order, rule, recommendation, request or suggestion relating to priority, rationing or allocation of any product covered hereby, Seller may terminate this agreement at any time on ten (10) days notice to purchaser.

*    *    *

"13. Purchaser understands and agrees that the quantities of product specified herein are the maximum quantities that will be delivered in any twelve month period and the actual quantities to be supplied by Seller will be subject at all times to and in accord with such Texaco and/or governmental allocation program in effect during the term of this agreement provided, however, that any allocation will be based upon the gallonage specified herein."

G-C Oil also executed two promissory notes to Texaco evidencing the $250,000 in product advances and the outstanding debt of $93,853.43. Defendants, Mr. Clifton and Mr. Peterson, each signed these notes guarantying payment of these obligations when due. They also signed guaranties whereby they "unconditionally and absolutely guarantee payment when due of any and all present or future indebtedness owed to" plaintiff by G-C Oil. Mrs. Clifton and Mrs. Peterson also signed guaranties similar to their husbands, but these guaranties were limited to the amount of the $100,000 line of credit.

On November 27, 1973, Congress enacted the Emergency Petroleum Allocation Act, 15 USC 751, *et seq.,* which authorized the establishment of a mandatory gasoline allocation program. In the regulations implementing this act, the Federal Energy Administration established a base period for determining one's allocations of 1972, limiting wholesalers to a certain percentage of the quantity of gasoline they purchased in that year. According to the regulations, G-C Oil's allocation base was approximately 5,802,500 gallons annually rather than the 10,000,000 gallons referred to in the contract.

On February 26, 1976, G-C Oil initiated a Chapter 11 proceeding in the Federal Bankruptcy

Court. On March 15, 1976, plaintiff notified defendants of G-C Oil's default and demanded payment.

Defendants claim that they were released from their obligations as guarantors because the enactment of the mandatory gasoline allocation program pursuant to 15 USC 751 *et seq.,* materially altered the underlying contract between Texaco and G-C Oil and adversely affected their obligations as guarantors, see *Wilson Leasing Co v Seaway Pharmacal Corp,* 53 Mich App 359; 220 NW2d 83 (1974). Defendants claim that because the mandatory allocation program used a base of only 5,802,500 gallons instead of the 10,000,000 referred to in the contract, they could not get enough gasoline to sell. Defendants claim that if G-C Oil had received the 10,000,000 gallons promised, it would have been in a better position to meet its obligations so that the guarantors would not have been called upon to pay on its default. Therefore, defendants claim that the enactment of the Emergency Petroleum Allocation Act, *supra,* materially altered the principal contract so as to release them from their obligations as guarantors.

The trial judge found that Texaco did not unconditionally promise to deliver to G-C Oil 10,000,000 gallons of gasoline even if this required violating mandatory Federal regulations. The trial judge found that this 10,000,000 gallon figure referred only to the maximum amount that Texaco would deliver. The trial judge recognized the inconsistency between the language in paragraph 13 of the distributor agreement which stated that any allocation program would be based on the gallonage specified, 10,000,000 gallons, and the language in the agreement which stated that any allocation program would be in accordance with government regulations in cases in which the government

regulations specified a different allocation base. The trial judge interpreted this language to mean that the 10,000,000 gallon base would apply to any voluntary allocation program which was instituted by either Texaco or the government. However, he concluded that the possibility that a mandatory allocation program might be created which required a base different from the 10,000,000 gallon allocation base specified in the agreement was controlled by the provisions of paragraphs 9 and 13 of the distributor agreement. Therefore, he concluded that Texaco was at liberty, under the terms of the contract, to observe the mandatory regulations without breaching the contract.[1]

Findings of fact by the trial court sitting without a jury are to be affirmed unless they are clearly erroneous, GCR 1963, 517.1. After a review of the record in this case, we conclude that the findings of the trial judge were not clearly erroneous. The guarantors in this case were aware of the terms of the underlying contract. All the parties were aware of the possibility of a voluntary and/or mandatory allocation program. The contract was structured accordingly. Although some of the contract terms appear inconsistent, the trial judge did not err in his interpretation of them. Contracts are to be interpreted so that meaning can be given to all the terms thereof, if possible, see *McIntosh v Groomes,* 227 Mich 215; 198 NW 954 (1924). The enactment of the mandatory program was a con-

---

[1] This conclusion is also supported by MCL 440.2615; MSA 19.2615, since the trial court found that Texaco did not assume a greater obligation requiring it to violate the mandatory Federal regulations, *see also, Terry v Atlantic Richfield Co,* 72 Cal App 3d 962; 140 Cal Rptr 510 (1977). 15 USC 755(c) also provided that compliance with the Federal regulations would be available as a defense in any breach of contract action. However, Texaco's liability for breach of contract is not the issue in this case. The issue to be resolved is whether the guarantors were released from their guaranties.

tingency contemplated by the parties when they entered into the agreement and they inserted a provision in the contract stating how this contingency would affect their relationship. The enactment of the mandatory program changed the parties' duties under the terms of the contract but it did not materially alter the terms of the contract.

Since there was no material alteration of the terms of the contract, the guarantors are not released from their obligations.[2] We also note that the separate guaranties executed by Mr. Clifton and Mr. Peterson were not, by their terms, tied to any particular contract between G-C Oil and Texaco. Therefore, any change in that contract would not have affected the guarantors' liability on these guaranties, see *John A Tolman Co v Griffin,* 111 Mich 301, 304; 69 NW 649 (1896).

Defendants also argue that the judgment should be reversed because, according to the terms of the note evidencing the debt on the product advances, G-C Oil's obligation to repay Texaco was not due. In the promissory note given to Texaco by G-C Oil, G-C Oil agreed to pay off the product advances without interest at the rate of one cent per every gallon of gasoline and fuel oils sold by Texaco to Clifton during the first two years of the agreement and at the rate of 1-1/4 cents per every gallon during the third year of said term. Defendants argue that this method of payment was the exclusive method contemplated by the parties. They

---

[2] *See, Grace v Croninger,* 12 Cal App 2d 603; 55 P2d 940 (1936); In *Grace, supra,* the guarantor guaranteed payment of the leasee's rents for a saloon. The lease provided that the building could be used only as a saloon, a cigar store, or a place for a shoeshine stand. The War Time Prohibition Act, 40 Stat 1046, was enacted and severely limited the leasee's use of the building. The leasee still used the building to serve non-alcoholic beverages, sell cigars, and to shine shoes. The Court in *Grace, supra,* held that although the enactment of the prohibition act severely frustrated the leasee's venture, the lease was still in effect and the guarantor was not released from his guaranty.

argue that the reference to one cent per gallon sold was a condition precedent to G-C Oil's obligation to repay Texaco and that until Texaco sold and delivered gasoline to G-C Oil, its debt was not due. Defendants also argue that G-C Oil has paid Texaco one cent for every gallon of gas delivered and so it does not owe Texaco any additional money on this note. The trial court found that the delivery of gasoline was not a condition precedent to G-C Oil's obligation to repay Texaco but that this language in the contract established just one of the alternative methods of payment open to G-C Oil.

We conclude that the trial court did not err in its interpretation of these provisions. In any event, if this clause is viewed as a condition precedent, the performance of it should be excused because of impossibility. The parties stipulated that Texaco had made over $121,000 in product advances to G-C Oil and that the $93,000 referred to in the note was an antecedent debt. The only performance left unfulfilled was the payment by G-C Oil. G-C Oil is now bankrupt and is not accepting deliveries of gasoline from Texaco. Since the performance of the condition precedent is now impossible and since the parties were acknowledging a debt absolute upon the signing of the contract, the debt is due and payable in a reasonable time after the condition precedent became impossible to fulfill, see *Wagner v Kincaid,* 291 Mich 262; 289 NW 154 (1939), Restatement Contracts, § 301, p 445, 5 Williston, Contracts, (3d ed), § 799, p 815, LRA 1917B, p 1050, 148 ALR 1075. A reasonable time has elapsed and the amounts payable under the note are now due. Therefore, the guarantors are obligated to pay.

The other issues raised by defendants do not warrant extended discussion or reversal.

Affirmed. Costs to plaintiff.