OPINION
STRANCH, Circuit Judge.
Ted and Maria Gatzaros (Plaintiffs) appeal the dismissal of their suit against the *550 Sault Ste. Marie Tribe of Chippewa Indians (the Tribe) and the Kewadin Casinos Gaming Authority (the Authority). See Fed.R.Civ.P. 12(b)(6). They seek to recover approximately $74 million under a guaranty agreement that was signed by the Tribe and the Authority. For the reasons explained below, we AFFIRM.
I. BACKGROUND
Plaintiffs owned a substantial membership interest in Monroe Partners, LLC, an entity that owned fifty percent of Greek-town Casino, LLC, the operator of Greek-town Casino in Detroit. When Plaintiffs decided to sell their interest, Monroe Partners, LLC agreed to redeem it for $265 million, to be paid to Plaintiffs over time in a series of “liquidation payments.” To accomplish the redemption, Plaintiffs and Monroe Partners, LLC entered into an “Amended and Restated Limited Liability Company Redemption Agreement” on July 28, 2000. The redemption agreement defined the “Redemption Amount” as $265 million dollars.
Contemporaneously with the redemption transaction, Monroe Partners, LLC sold Plaintiffs’ redeemed membership interest to Kewadin Greektown Casino LLC for $265 million.[1] Monroe Partners, LLC accomplished the sale of Plaintiffs’ interest through an “Amended and Restated Limited Liability Company Subscription Agreement” executed by Monroe Partners, LLC and Kewadin Greektown Casino LLC on July 28, 2000. The subscription agreement defined the “Subscription Amount” as “the Redemption Amount”; in other words, $265 million. In the subscription agreement, Kewadin Greektown Casino LLC agreed to pay Monroe Partners, LLC the amounts owed to Plaintiffs under the redemption agreement as those payments came due. The subscription agreement required Kewadin Greektown Casino LLC to obtain a limited guaranty agreement from the Tribe and the Authority binding them, with certain conditions precedent, to pay the subscription amount in the event that Kewadin Greektown Casino LLC defaulted on its obligations under the subscription agreement.
On the same day the redemption and subscription agreements were executed, the Tribe and the Authority executed the guaranty agreement. Paragraph 2 of the guaranty agreement provides (emphasis added):
2. Funding Obligation. Subject to the limitations, terms and conditions set forth in this Guaranty Agreement, the Sault Tribe and the Authority, for value received, jointly and severally, unconditionally and absolutely guaranty to fund the Subscription Amount, as and when due from the Subscriber under the Subscription Agreement, upon an event of default by the Subscriber in making payment of the Subscription Amount, as and when due, and receipt by the Guarantors of notice and demand from Monroe (the “Funding Obligations ”). The Tribe and the Authority agreed to pay the subscription amount (the redemption amount of $265 million) if Kewadin defaulted on the subscription agreement.
The “limitations, terms and conditions” referred to in paragraph 2 of the guaranty agreement are found in paragraph 8, which provided that the Tribe and the Authority were obligated to pay under the guaranty agreement in the event of Ke-wadin’s default on the subscription agreement only if the Tribe and the Authority had received payments from Greektown Casino in excess of certain thresholds. *551 The Tribe and the Authority did not receive payments from Greektown Casino in excess of the thresholds specified in paragraph 3 of the guaranty agreement. Consequently, the obligation of the Tribe and the Authority to pay under the guaranty agreement was never triggered.
Plaintiffs received most of the payments due to them under the redemption agreement, but Kewadin Greektown Casino LLC ultimately breached its payment obligation under the subscription agreement with Monroe Partners, LLC. Monroe Partners, LLC in turn breached its payment obligation to Plaintiffs under the redemption agreement. On May 29, 2008, Kewad-in Greektown Casino LLC and Monroe Partners, LLC filed for Chapter 11 bankruptcy protection in the Eastern District of Michigan.
In 2012, Plaintiffs undertook efforts to recover nearly $74 million in principal and interest still owed to them under the redemption agreement. Plaintiffs’ counsel notified the Tribe and the Authority by letter that Plaintiffs, standing in the shoes of Monroe Partners, LLC as third-party beneficiaries to the guaranty agreement, were modifying and accelerating the Funding Obligations under paragraph 2. Plaintiffs’ counsel modified paragraph 2 of the guaranty agreement to state:
2. Funding Obligation. The Sault Tribe and Authority, for value received, jointly and severally, unconditionally and absolutely, guaranty to fund the Subscription Amount upon the event of default by the Subscriber in making payment of the Subscription Amount upon receipt by the Guarantors of notice and demand from Monroe and/or any other Retiring Members. As of October 17, 2012, the Guaranty is no longer subject to the Section 3 hereunder, entitled “Limitation.” The Tribe and/or Authority shall immediately pay to Ted Gatza-ros and Maria Gatzaros, as Retiring Members, upon delivery of written demand, all sums sue them ... arising from the Subscriber’s default of the Subscription Agreement. The Sault Tribe and Authority are also liable to reimburse any sums paid by the Ted Gatza-ros and/or Maria Gatzaros, as Retiring Members, to Buchwald Capital Advisors, LLC, as litigation Trustee, or any other person or entity arising from the United States Eastern District Court and United States bankruptcy Court Cases identified by ease numbers 08-53104 and 2:12-CV-12340-PDB-RSQ. The Sault Tribe and Authority are also liable to Ted Gatzaros and/or Maria Gatzaros, as Retiring Members, for all cost of collection of the amounts due hereunder, including their actual attorney fees.
By unilateral action, Plaintiffs eliminated the limitations in paragraph 3 that had set the necessary conditions precedent on the obligation of the Tribe and the Authority to pay under the guaranty agreement if Kewadin defaulted on the subscription agreement. Plaintiffs declared the remaining amount of the debt, plus attorney fees, immediately due and owing to them from the Tribe and the Authority.
Plaintiffs justify their unilateral action by pointing to paragraph 8 of the guaranty agreement, which included various waivers by the Tribe and the Authority. Within paragraph 8, the Tribe and the Authority agreed
that Monroe may, once or any number of times, modify the terms of any Funding Obligations, compromise, extend, increase, accelerate, renew or forebear to enforce payment of any or all Funding Obligations, all without notice to the Sault Tribe and the Authority and without affecting in any manner the unconditional obligation of the Sault Tribe and *552 the Authority under this Guaranty Agreement.
As third-party beneficiaries of the guaranty agreement, Plaintiffs contend they may step into the shoes of Monroe Partners, LLC and modify, accelerate, and enforce the terms of the Funding Obligations without notice and without affecting the obligation of the Tribe and the Authority to pay under the guaranty agreement. They further contend that the Tribe and the Authority waived all defenses to this suit because the guaranty agreement says that the Tribe and the Authority “unconditionally and irrevocably waive each and every defense and setoff of any nature which, under principles of guaranty or suretyship, would operate to impair or diminish in any way the obligation of the Sault Tribe and the Authority under this Guaranty Agreement[.]”
II. ANALYSIS
Plaintiffs could not unilaterally modify the guaranty agreement for two primary reasons. First, the Tribe and the Authority did not agree in writing to the modification, as paragraph 10 of the guaranty agreement requires. Second, Plaintiffs misconstrue the meaning of the waiver language found in paragraph 8 of the guaranty agreement. We also find no merit in Plaintiffs’ contention that the Tribe and the Authority waived all defenses they may have to the Plaintiffs’ claim.
A. Plaintiffs could not unilaterally modify the guaranty agreement

1. The modification was not approved by the Tribe and the Authority

Paragraph 10 of the guaranty agreement provides:
No waiver, consent, modification or change of the terms of the Guaranty Agreement shall bind any of the Sault Tribe or Authority or Monroe unless in writing and signed by the waiving party ... and then this waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given....
In construing the terms of a guaranty agreement, the parties’ intentions govern. If the contract language is unambiguous, construction of the agreement is a question of law for the court after it considers the entire instrument. See Mazur v. Young, 507 F.3d 1013, 1018 (6th Cir.2007) (citing Michigan contract law). The guaranty agreement must be strictly construed in favor of the guarantor. Bandit Indus., Inc. v. Hobbs Int’l, Inc., 463 Mich. 504, 620 N.W.2d 531, 534-35 (2001).
Paragraph 10 is not ambiguous. The Tribe and the Authority must consent in writing to any modification of the guaranty agreement. The Tribe and the Authority did not consent in writing to eliminate paragraph 3 from the guaranty agreement, which included the critical conditions precedent to their obligation to pay in the event of Kewadin’s default. They also did not agree to modify paragraph 2 or to pay Plaintiffs’ attorney fees. Plaintiffs’ unilateral attempt to modify the contract language was ineffective under paragraph 10 of the guaranty agreement.
Michigan law permits contracting parties to amend a contract notwithstanding a written modification clause if both parties agree to do so, but mutuality is paramount and unilateral contract modifications are forbidden. Contracting parties “are free to mutually waive or modify their contract notwithstanding a written modification or anti-waiver clause,” but this “freedom to contract does not permit a party unilaterally to alter the original contract.” Quality Prods. & Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 666 N.W.2d 251, 253 (2003). “[M]utuality is the centerpiece *553 to waiving or modifying a contract, just as mutuality is the centerpiece to forming any contract.” Id. Notwithstanding the written modification clause, the Tribe and the Authority did not verbally agree to modify the guaranty agreement in Plaintiffs’ favor.

2. Plaintiffs misconstrue the meaning of paragraph 8 of the guaranty agreement

The second reason why Plaintiffs’ attempt to modify the guaranty agreement fails is that Plaintiffs misconstrue the meaning of the waiver language found in paragraph 8 of the guaranty agreement. Paragraph 8 is largely lifted from a standard Michigan UCC form. R. 16-1 Page ID 396. The language of paragraph 8 allowed Monroe Partners LLC to modify the terms of the underlying debt obligation to Plaintiffs by compromising, extending, accelerating, renewing, or forebearing the underlying obligation, without releasing the Tribe and the Authority from their obligations under the guaranty agreement. This language was necessary to satisfy Michigan law, which provides that any material alteration of a principal debt or obligation completely discharges any guaranty of that debt or obligation, unless the guarantor consents to the alteration. Wilson Leasing Co. v. Seaway Pharmacol Corp., 53 Mich.App. 359, 220 N.W.2d 83, 88-89 (1974). See also Mazur, 507 F.3d at 1018 (noting general rule that a guarantor is released from liability if an act or omission by the creditor discharges the principal debtor of the principal obligation by rule of law, even if the principal obligation has not been paid).
By including paragraph 8 in the guaranty agreement, the Tribe and the Authority waived notice and consent if Monroe Partners, LLC determined that it was necessary to modify in some way the underlying debt obligation to Plaintiffs. The Tribe and the Authority did not grant Monroe Partners, LLC (or Plaintiffs standing in Monroe’s shoes as third-party beneficiaries) the right to modify the guaranty agreement unilaterally without the consent of the Tribe and the Authority.
Plaintiffs’ interpretation of paragraph 8 would lead to an absurd result. If Plaintiffs could unilaterally modify the guaranty agreement any time they desired for any reason, then paragraph 10, requiring the consent of the parties in writing for any contract modification, would be read out of the contract. See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 545 (6th Cir.2007) (applying Michigan law and observing that contracts must be construed with common sense and in a manner to avoid an absurd result).
B. The Tribe and the Authority did not waive their defenses
Finally, the Tribe and the Authority did not waive all legal and contract defenses they may have to Plaintiffs’ claim. In paragraph 8 of the guaranty agreement, the Tribe and the Authority waived “each and every defense and setoff of any nature which, under principles of guaranty and suretyship, would operate to impair or diminish in any way the obligation of the ... Tribe and the 'Authority under this Guaranty Agreement[.]” R. 18-2 page ID 432 (emphasis added). The Tribe and the Authority agreed not to raise common guaranty or suretyship defenses that would allow them to avoid liability on the guaranty agreement. They did not waive all right to defend themselves against any and all claims.
This provision of the guaranty agreement aligns with settled law. “The guarantor may generally raise as a defense to liability on the guaranty any defense that *554 could be raised by the principal debtor” with certain limited exceptions. Norton Creditors’ Rights Handbook § 2:7 (July 2012). The primary suretyship defenses are impairment of recourse and impairment of collateral. Id. Guarantors routinely waive these suretyship defenses which would otherwise result in a discharge of the guarantor if the underlying debt is modified. Restatement (Third) of Suretyship and Guaranty, § 48, Comments a. & d. (June 2013); Norton § 2:7 (“The guarantor has numerous potential defenses to enforcement of the guaranty that are commonly referred to as suretyship defenses ... [these] defenses are generally waiveable. Virtually all guaranties contain waivers of all suretyship defenses”). Nothing in the guaranty agreement before us waived the right of the Tribe and the Authority to raise ordinary defenses to Plaintiffs’ attempted unilateral contract modification, nor did anything in the guaranty agreement waive the right of the Tribe and the Authority to file a Rule 12(b)(6) motion below.
III. CONCLUSION
Because the guaranty agreement is unambiguous and the applicable law is clear, we have no basis on which to remand this matter to the district court for the taking of extrinsic evidence. One party to a contract may not unilaterally rewrite the agreement to obtain more favorable terms. Contract modification requires mutuality of consent, and that element is missing here. Accordingly, we AFFIRM the judgment of the district court.

. Kewadin Greektown Casino LLC is not the same entity as Kewadin Casinos Gaming Authority. The latter entity is one of the named defendants in the lawsuit.