FIRST NATIONAL BANK & TRUST CO. OF ANN ARBOR *v.*
DOLPH.

1. Principal and Surety—Guaranty.

A surety and guarantor are similar in the particular that each
promises to answer for the debt or default of another, the
surety assuming liability as a regular party to the primary
undertaking, while the guarantor does not, his liability depend-
ing upon an independent, collateral agreement by which he
undertakes to pay the obligation if the primary payor fails
to do so.

2. Same—Stockholders—Guarantee of Payment of Trust Mort-
gage Bonds.

Defendants, stockholders of corporation which issued trust mort-
gage bonds, carrying their agreement guaranteeing to pay them
punctually either when due or at an accelerated or extended
date and characterizing obligation as absolute, primary and
performable on demand, were sureties on such bonds.

3. Parties—Action by Trustee Against Surety of Trust Mort-
gage Bonds.

Statute providing that a party with whom or in whose name a
contract has been made for the benefit of another may sue in his
own name without joining with him the party for whose benefit
the action is brought contemplates that trustee under trust mort-
gage may, at the written request of holder of bonds issued
thereunder, institute an action to recover a judgment on defend-
ant stockholders' guarantee of punctual payment (3 Comp.
Laws 1929, § 14010).

4. Bonds—Trust Mortgages—Parties Plaintiff—Action Against
Surety.

Either the trustee under a trust mortgage under which negotiable
bearer bonds were issued or a holder of the bonds may sue de-
fendant sureties on their promise to pay trustee the principal
and interest for the benefit of the bondholders (Comp. Laws
1929, §§ 9300, 14010).

5. CORPORATIONS—BONDS—ACTION AGAINST SURETY—BONA FIDE
PURCHASER FOR VALUE.

Federal Deposit Insurance Corporation to which a bank had
transferred negotiable bearer bonds that had been issued under
a trust mortgage on property of corporation whose stockholders
had become surety on the bonds, as security for loan to the
bank which in turn had taken such bonds as security for a
loan to one of the sureties who had orally released the other
two sureties upon purchase of their interest in the corporation,
*held*, a *bona fide* purchaser for value without notice of the oral
release and to be protected from loss, where there is nothing
on the face of the bonds to put it on notice nor a showing in
the record that either the bondholder or trustee had any in-
formation as to the release.

6. SAME—SURETY ON BONDS—ORAL RELEASE—BONA FIDE PURCHASER
FOR VALUE WITHOUT NOTICE.

Oral agreement between sureties on negotiable bearer corporate
bonds, issued under a trust mortgage, releasing two when the
third purchased their interests in the corporation, was insuffi-
cient to release any of them from liability when the party who
purported to give the release pledged the bonds, containing
their promise, to a bank which, in turn, transferred them to an-
other without notice of any claim of such release.

7. SAME—ACQUISITION OF BONDS BY A COSURETY.

Acquisition by one cosurety of bonds of corporation of which
sureties were stockholders did not discharge the sureties' obli-
gation as a matter of law as the separation of maker and
surety remained.

8. GUARANTY—DISCHARGE OF GUARANTOR.

A guarantor is discharged by operation of law from further lia-
bility by any act of the guarantee which extinguishes the prin-
cipal contract; or by payment of the principal obligation by
the guarantor; or by the guarantor becoming the holder of the
principal obligation, except where he becomes the holder thereof
for a limited purpose only.

9. CORPORATIONS—BONDS—DISCHARGE OF SURETIES—PURCHASE OF
BONDS FOR LIMITED PURPOSE.

Sureties on negotiable bearer bonds, issued under trust mortgage
by a corporation, were not released by acquisition of such bonds
by one of the cosureties who acquired them for the limited pur-
pose of pledging them with a bank which in turn transferred

them to the Federal Deposit Insurance Corporation as security for a loan to the bank as bonds were the obligation of the corporation which did not become the holder thereof.

Appeal from Washtenaw; Sample (George W.), J. Submitted October 13, 1938. (Docket No. 9, Calendar No. 40,046.) Decided December 22, 1938.

Assumpsit by First National Bank & Trust Company of Ann Arbor, as trustee, a national banking association in voluntary liquidation, against Ray A. Dolph, J. Fred Wuerth and Samuel O. Davis for sums due on a bond guaranty. Motion to dismiss by defendants Dolph and Wuerth. Plaintiff appeals from order dismissing cause. Reversed.

*Albert E. Blashfield,* for plaintiff.

*Reading & Reading (Schmalzriedt, Frye, Granse & Frye,* by *Ezra H. Frye,* of counsel), for defendant Wuerth.

*Carl H. Stuhrberg,* for defendant Dolph.

Bushnell, J. The Super Realty Company issued bonds, secured by a trust mortgage on land in Washtenaw county, the First National Bank of Ann Arbor being named therein as trustee. Each of the bonds contained the following provision:

"For value received, we, Ray Dolph, J. Fred Wuerth and Samuel O. Davis, being the owners of more than $\frac{2}{3}$ of the capital stock of the Super Realty Company, do hereby guarantee the trustee of the within mentioned mortgage the punctual payment, when due, whether at maturity or at an accelerated or extended date, of the principal of the within bond and the interest thereon, according to the tenor thereof and of the coupons thereto belong-

ing, respectively, for the benefit of the holder thereof. Diligence and notice shall not be required; nor shall any change in any provision of said bond or mortgage or any indulgence in anywise affect the obligation hereof, whether made or granted with or without notice; the obligation hereunder shall be absolute and primary and performable on demand.''

This undertaking was signed by Ray A. Dolph, J. Fred Wuerth and Samuel O. Davis, the defendants herein. Dolph is president of the Super Realty & Mortgage Loan Company, formerly the Super Realty Company, and is the owner of all of the capital stock of the corporation with the exception of two shares. In 1929 he purchased the interests of Wuerth and Davis and made an oral agreement with them which purported to release them from any and all liability on the bonds of the Super Realty Company. In 1934 Dolph entered into an arrangement with William L. Walz, then president of the Ann Arbor Savings Bank, whereby the bank agreed to advance $12,000 for the purpose of purchasing outstanding Super Realty bonds, the bank then holding Dolph's individual and direct obligations totalling $26,030, which were inadequately secured. The bank subsequently acquired $35,000 worth of bonds by the use of a part of the proceeds of the $12,000 loan to Dolph. The transaction resulted in the combining of Dolph's old and new loans into a new obligation, evidenced by his $37,500 note, the bank holding as security therefor other property and Super Realty bonds having a face value of $33,500. In 1936 these bonds and a number of other securities then held by the bank were transferred to the Federal Deposit Insurance Corporation in consideration of a loan amounting to over $2,000,000, which

was made in order to enable the newly-created Ann Arbor Savings & Commercial Bank to purchase all of the assets and assume the deposit liability of the Ann Arbor Savings Bank.  When the Super Realty bonds were transferred to the Federal Deposit Insurance Corporation on February 15, 1936, only the interest coupons maturing June 1, 1936, and subsequent thereto, were attached..

While it is claimed by defendants that the Federal Deposit Insurance Corporation had knowledge of the purported oral release of Wuerth and Davis, the affidavit of Walz indicates that, though this was known to him at the time the Ann Arbor Savings Bank accepted the bonds as collateral, so far as he knew, no one connected with the bank ever mentioned the matter to the Federal Deposit Insurance Corporation prior to the transfer of the bonds. Bruce P. Greene, the liquidator of the Federal Deposit Insurance Corporation, stated that the first time he learned anything about the claimed release was a few days after he, on behalf of the Federal Deposit Insurance Corporation, had requested the First National Bank & Trust Company of Ann Arbor, formerly First National Bank of Ann Arbor, as trustee of the bond issue, to make demand for payment of the full amount of the bonds and interest upon Dolph, Wuerth and Davis, and, in the event of failure of such payment, then to take such proceedings as might be desirable and necessary. Greene further stated that, notwithstanding an examination of the books and records of the Ann Arbor Savings Bank, he was unable to obtain any information with respect to the claimed oral release. The Federal Deposit Insurance Corporation insists that it is a good faith holder for value of the bonds in question.

Plaintiff, as trustee under the bond issue, upon the written request of the Federal Deposit Insurance Corporation, present holders of the bonds, filed a declaration seeking a judgment against defendants, which was met by separate motions to dismiss on behalf of defendants Dolph and Wuerth. Bonds totalling $33,500 in amount, in the hands of the Federal Deposit Insurance Corporation, and two bonds totaling $1,500, in the hands of the First National Bank & Trust Company, were received in evidence.

The court considered the facts as disclosed by various affidavits, the briefs filed by respective counsel, and found that defendant Dolph fully disclosed to the officers of the Ann Arbor Savings Bank, when the bonds were pledged by him, that "all of the defendants in this cause were discharged from liability under said bonds and said bonds were accepted as collateral with such understanding." The court further found that Dolph was discharged from personal obligation thereunder by operation of law and that the Federal Deposit Insurance Corporation was not a *bona fide* purchaser for value and without notice, in that the bonds "are held as collateral to the personal loan of Ray A. Dolph."

The circuit court also stated that:

"The purchase of such bonds by Ray A. Dolph discharged his personal obligation thereunder, and a discharge of one joint guarantor is a discharge of all.

" 'A person cannot be both the obligor and the obligee in a bond, even in connection with others, or in another capacity; and a bond so executed is unenforceable so far at least as it affects one who occupies thereunder this dual relation.' 9 C. J. p. 10.

"The release of a joint or joint and several guarantors or indorser releases the remaining guarantor or indorser from further liability. *Seligman* v. *Gray*, 66 Mich. 341."

An order of dismissal was entered, from which plaintiff appeals.

In describing defendants the court used the terms "surety" and "guarantor" interchangeably.

"While a surety and guarantor are not the same in all respects, they are similar in the particular that each promises to answer for the debt or default of another, the surety assuming liability as a regular party to the primary undertaking, while the guarantor does not, but his liability depends upon an independent, collateral agreement by which he undertakes to pay the obligation if the primary payor fails to do so. The authorities, in discussing certain principles common to both, often use the terms interchangeably." *In re Kelley's Estate,* 173 Mich. 492 (Ann. Cas. 1914 D, 848).

So tested, defendants appear to be sureties on the bonds.

Appellees argue that plaintiff, as trustee of a real estate trust mortgage, does not have the right to sue upon the "guaranty," it being a part of a negotiable bearer bond, to which plaintiff has no title and of which it is not the holder, and is not given any exclusive right to bring the action by the collateral trust instrument. Defendant Dolph questions the right of the trustee to bring suit against him on his personal "guaranty" on bonds of which he is the owner. Reference to the quoted language of the undertaking shows that it runs to the trustee:

"Do hereby guarantee the trustee of the within mentioned mortgage * * * for the benefit of the holder thereof."

A party with whom or in whose name a contract has been made for the benefit of another may sue in his own name without joining with him the party for whose benefit the action is brought. 3 Comp.

Laws 1929, § 14010 (Stat. Ann. § 27.654). The instant action was begun at the written request of the Federal Deposit Insurance Corporation, a bondholder, and such action is contemplated by the cited statute.

It is argued, on the basis of a broad statement in 47 C. J. p. 39, that, before a trustee can sue, he must have an unconditional title. Either this trustee or the holder of these bonds may sue defendant sureties upon their promise. 2 Comp. Laws 1929, § 9300 (Stat. Ann. § 19.93); *Mendelson* v. *Realty Mortgage Co.*, 257 Mich. 442.

The trial judge's finding that the Federal Deposit Insurance Corporation was not a *bona fide* purchaser for value and without notice of the oral release is not supported by any testimony in the record. If it is a *bona fide* holder for value of the bonds as collateral security for a loan without notice of any infirmity therein, it should be protected. *First National Bank of Niles* v. *Shue*, 119 Mich. 560. There was nothing upon the face of the bonds to put the Federal Deposit Insurance Corporation on notice, and there is no showing in this record that it or the trustee had any information as to the oral release.

We are unwilling to agree with the circuit court's holding that, under the facts presented by this record, the oral agreement between the sureties was sufficient to release any of them from liability from their undertaking when the party who purported to give the release pledged the bonds containing his promise and that of others to a bank which in turn transferred them to another without notice of any claim of such release.

The basis for the trial judge's decision seems to be that the purchase of the bonds by Dolph dis-

charged his personal obligation thereunder and that his discharge effected a discharge of his cosureties. The trial court relied upon a broad statement in 9 C. J. p. 10, to the effect that a person cannot, at the same time, be a joint obligor and obligee in a bond, and that such an undertaking is unenforceable, and, as to the release of the other sureties, gave as its authority *Seligman* v. *Gray,* 66 Mich. 341. Seligman brought an action on the common counts upon a note of which Gray was maker and Adams and Freeman were joint indorsers. No judgment was taken against Gray and the defense of the indorsers was failure of presentation and lack of notice of dishonor. The trial court directed a verdict in favor of Freeman and against Adams. This court held that "it is well settled law that there must be, in a joint action, a joint judgment, or no judgment at all," and that, "unless both could be held,   *   *   * neither could be."

This case is not authority for the proposition stated by the trial judge, for if the bonds in question were in the first instance the sole obligation of Dolph, his guaranty of them would have been an idle ceremony. They were in fact the obligation of a corporation whose liability was separate and distinct from that of Dolph, the individual. When Dolph, the surety, acquired ownership of the bonds, the separation of maker and surety still remained and the instrument was not discharged by operation of the law in that the principal debtor did not thereby become the holder of the instrument.

Appellee Dolph cites the *Seligman Case* and 28 C. J. p. 993, which says that:

"A guarantor is discharged by operation of law from further liability by any act on the part of the guarantee which extinguishes the principal con-

tract, or by payment of the principal obligation by the guarantor; or by the guarantor becoming the holder of the principal obligation, except where he becomes the holder thereof for a limited purpose only, such as that of collection."

Dolph acquired the bonds for the limited purpose of pledging them with the Ann Arbor Savings Bank, which accepted them as security for a loan and subsequently transferred them to the Federal Deposit Insurance Corporation.  There is nothing in the record to show that the bank intended to look only to the maker or the underlying security except the affidavit of one of its former officers, Walz, who said that Dolph informed him that Wuerth and Davis had been discharged from all personal liability thereunder.  In a subsequent affidavit, made because the statements in his former affidavit were "inadequate and incomplete," Walz carefully avoided a repetition of his former statement with respect to the release of the sureties.  We quote from the second affidavit of Walz as follows:

"As a matter of fact, this deponent's personal knowledge of the matters relating to the arrangement between Ray A. Dolph and the other guarantors of said bonds extends only to this: That at one time Ray A. Dolph and his wife had joined together in the execution of a bond, note or some form of indemnity instrument in favor of J. Fred Wuerth and Samuel O. Davis for the purpose therein expressed as this deponent recalls of indemnifying and saving J. Fred Wuerth and Samuel O. Davis harmless in respect to their liability upon the guarantee of said bonds, which indemnity instrument had been left with this deponent in escrow and had remained in the hands of this deponent in escrow for some years prior to the transactions above related and continued to remain in the hands of this deponent

until sometime after all of the said Lakewood bonds had been purchased from the bondholders and delivered to the Ann Arbor Savings Bank as above related when, at the direction of the parties, this deponent surrendered said indemnity instrument.

"This deponent was informed that the surrender of said indemnity instrument was required for the purpose of releasing the said guarantors from liability upon said guaranty, but this deponent's best recollection is that the consent of the Ann Arbor Savings Bank to such a release was never given in writing, nor was there any effort made by anyone to indicate anything to that effect upon any of the bonds which were then in the possession of the Ann Arbor Savings Bank, as pledgee.

"It is also the best recollection of this deponent that no record was ever made in the Ann Arbor Savings Bank either of the escrow or the indemnity instrument because it was not a bank escrow or of the claim of the guarantors about being released from liability upon the guaranty and so far as this deponent knows no one connected with the Ann Arbor Savings Bank ever mentioned anything about these matters to anyone connected with the Federal Deposit Insurance Corporation at any time prior to the transfer of said bonds to the said Federal Deposit Insurance Corporation."

The trial judge reached an erroneous conclusion and the order dismissing the cause should be vacated and the cause remanded for further proceedings not inconsistent herewith. It is so ordered, with costs to appellant.

Wiest, C. J., and Butzel, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.