*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0455p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHARD F. MAZUR,

*Plaintiff-Appellant,*

No. 06-1525

> *v.*

ROI W. YOUNG; DYAN YOUNG,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 05-10109—David M. Lawson, District Judge.

Argued: May 29, 2007

Decided and Filed: November 16, 2007

Before: DAUGHTREY and MOORE, Circuit Judges; SHADUR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Charles M. Fortino, FORTINO, PLAXTON, MOSKAL & COSTANZO, Alma, Michigan, for Appellant. James J. Hayes IV, LAMBERT, LESER, COOK, GIUNTA, MILSTER & GANNON, Bay City, Michigan, for Appellee. **ON BRIEF:** Charles M. Fortino, FORTINO, PLAXTON, MOSKAL & COSTANZO, Alma, Michigan, for Appellant. James J. Hayes IV, LAMBERT, LESER, COOK, GIUNTA, MILSTER & GANNON, Bay City, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. SHADUR, D. J. (pp. 10-14), delivered a separate dissenting opinion.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. In this diversity action we are asked to determine whether, under Michigan law, the guarantor of a land contract is liable to the seller for any deficiency once the seller has elected forfeiture as his remedy. For the reasons discussed below, we conclude that a judgment for possession after forfeiture extinguishes the land contract, leaving

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

1

no legal basis to pursue further claims against the guarantor. Therefore, in this case, the guarantor is not liable, and we affirm the district court's entry of summary judgment for the guarantor.

## I. BACKGROUND

Roi and Dyan Young, a husband and wife, moved to Michigan in 1993 so that Roi Young could work with Richard Mazur. In August of that year, the Youngs found a vacation home in Perrinton, Michigan ("the property") that they wanted to purchase. Their efforts were frustrated, however, when Roi Young could find financing only at an interest rate that he believed was too high. When Roi Young shared his problem with Mazur, Mazur indicated that "he could buy the property at an unbelievably low rate and just sell it back to [Roi Young]." Joint Appendix ("J.A.") at 235 (Roi Young dep. at 19). In September 1993, Mazur bought the property for $525,000; Roi Young contributed the $125,000 down payment, and Mazur took out a mortgage on the property for the remaining $400,000.

The Youngs apparently did not want to own the property in their name because Roi Young worked in a litigious business. J.A. at 238. Accordingly, in December 1993, the parties agreed that Mazur would sell the property not to the Youngs, but to Equitable Benefit Insurance Services, Inc. ("EBIS"), a California corporation of which Roi Young was the sole shareholder. Under the terms of the land contract, EBIS was to pay Mazur according to the payment terms of the mortgage. Additionally, Roi and Dyan Young entered into a guaranty contract with Mazur that "unconditionally guarantee[d] to [Mazur] the full and complete performance of all of [EBIS's] covenants and obligations under [the] Land Contract to the same extent and with the same force and effect as though the undersigned was the primary debtor under the Land Contract." J.A. at 18 (Guaranty of Land Contract ¶ A).

Sometime during the summer of 1997, EBIS stopped making payments on the land contract, and the Youngs stopped using the property. Eventually, Mazur changed the locks and, in December of that year, he tried to sell the property. Mazur, however, was unable to sell the property because EBIS held the title.

To reclaim the title, in February 1999, Mazur served EBIS and the Youngs with a notice of forfeiture. Mazur filed for possession, and on February 4, 2000, Mazur and EBIS entered into a consent judgment wherein Mazur took possession of the property, EBIS agreed that the land contract had been forfeited, and EBIS waived redemption rights. J.A. at 118. On April 28, 2000, the state trial court dismissed without prejudice Roi and Dyan Young as defendants in the action because of a lack of progress in the case.

According to Mazur, for the next two years he continued to pay installments on the then-refinanced mortgage, utility bills, property taxes, and general maintenance and housekeeping costs. On March 26, 2002, Mazur sold the property for $400,000. Mazur claims that the sale price did not fully satisfy the cost of sale, outstanding property taxes, and the outstanding debt on the mortgage, costing him $41,405.75 out-of-pocket.

To recover that deficiency and other losses, Mazur sued the Youngs in the Gratiot County Circuit Court for $274,676.95, alleging that EBIS had breached its land contract with Mazur and that the Youngs were liable as guarantors for all damages that resulted from the breach. On the basis of federal diversity jurisdiction, the Youngs removed the case to the federal district court. Both parties filed motions for summary judgment, and on March 17, 2006, the district court granted the Youngs' motion and denied Mazur's. Mazur now appeals the district court's judgment.

## II.  EFFECT OF THE GUARANTY AGREEMENT

### A.  Standard of Review

We review de novo a district court's order granting summary judgment.  *Himmel v. Ford Motor Co.*, 342 F.3d 593, 597 (6th Cir. 2003).  Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c).

Because this is a diversity case, we must apply the choice-of-law rules and substantive law of Michigan, the forum state.  *Himmel*, 342 F.3d at 598.  If we confront an issue that "has not yet been resolved by the [Michigan] courts, we must attempt to predict what the [Michigan] Supreme Court would do if confronted with the same question."  *Id.*  In such circumstances, we consider decisions of the Michigan Court of Appeals as well as relevant Michigan Supreme Court dicta, restatements of law, law-review commentaries, and the rules adopted by other jurisdictions.  *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995).

### B.  Default Guaranty Rules

Before considering the specific contract provisions at issue in this case, we briefly review the default rules that govern guaranties and land contracts under Michigan law.  Except where the specific terms of the agreement between Mazur and the Youngs override, we apply the default rules.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 5 cmt. b (1981) ("Much contract law consists of rules which may be varied by agreement of the parties.").

When a seller of property seeks redress against a recalcitrant buyer, the seller must make an election of remedies.  The seller can choose to pursue either foreclosure or forfeiture, but not both.  *See Mich. Nat'l Bank v. Cote*, 546 N.W.2d 247, 249 n.4 (Mich. 1996) ("If the plaintiff prefers to have money damages under the contract, he should be required to elect that remedy or to foreclose in the circuit court where the defendant will receive credit for the proceeds of the foreclosure sale." (quoting MICH. LAW REVISION COMM'N, 5TH ANNUAL REPORT 36) (emphasis removed)).

In a foreclosure action under Michigan law, "the court has the power to order a sale of the premises which are the subject of the . . . land contract, or of that part of the premises which is sufficient to discharge the amount due on the . . . land contract plus costs."  MICH. COMP. LAWS § 600.3115.  The proceeds of the court-ordered foreclosure sale are applied toward paying down the debt, and the defendant-buyer can keep any surplus that might remain.  MICH. COMP. LAWS § 600.3135(1).  Of particular importance for this case, if a foreclosure sale is insufficient to cover the entirety of the debt, "the clerk of the court shall issue execution for the amount of the deficiency" against either the defendant, MICH. COMP. LAWS § 600.3150, or against any other party liable for the deficiency, MICH. COMP. LAWS § 600.3160.  Thus, when a seller chooses to pursue foreclosure, the plaintiff-seller can keep neither the property nor any surplus from the court-ordered sale, but the defendant, as well as the guarantor, remains liable for any deficiency that remains after the sale of the property.  *See* MICH. COMP. LAWS § 600.3160; *United States v. Leslie*, 421 F.2d 763, 766 (6th Cir. 1970).

In contrast, a seller may instead elect to pursue forfeiture.  If the seller opts for forfeiture[1] and prevails, the seller receives "full possession of the premises."  MICH. COMP. LAWS

---

[1] Forfeiture is not always available; the agreement between the parties must "expressly provide for termination or forfeiture, or give the vendor the right to declare a forfeiture, in consequence of the nonpayment of any moneys required to be paid under the contract or any other material breach of the contract."  MICH. COMP. LAWS § 600.5726.

§ 600.5744(1). At that point, the seller can keep the property, sell the property, or do with it whatever the seller pleases. What the victorious seller cannot do, however, is continue to pursue the buyer for any deficiency: "[A] *judgment for possession after forfeiture* of an executory contract for the purchase of premises *shall merge and bar any claim for money payments due* or in arrears under the contract at the time of trial." MICH. COMP. LAWS § 600.5750 (emphasis added); *see also Cote*, 546 N.W.2d at 249 n.1 ("This section is, in effect, a codification—arguably with modifications—of the common-law rule that the forfeiture of an executory contract for purchase of land constitutes an election of remedies, precluding the vendor from later seeking damages for breach of contract." (citation omitted)); *Durda v. Chembar Dev. Corp.*, 291 N.W.2d 179, 182 (Mich. Ct. App. 1980) ("It is clear that once the vendor has elected the remedy of forfeiture and proceeded to the point of issuance of a writ of restitution, he cannot recover a deficiency judgment for money due under the contract.").

Because forfeiture discharges the buyer from liability for the debt, even if there is a deficiency, judgment for possession after forfeiture has important consequences for guarantors. "As a general rule, the guarantor is released from liability if some act or omission on the part of the creditor discharges the principal debtor of the principal obligation by a rule of law, even if the principal obligation has not been paid." 38 AM. JUR. 2D *Guaranty* § 96; *see also Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 220 N.W.2d 83, 88-89 (Mich. Ct. App. 1974) ("Any material alteration of a principal debt or obligation operates to completely discharge any guaranty of that debt or obligation, unless the guarantor consented to the alteration." (citations omitted)). Thus, as a general rule, a judgment for possession after forfeiture releases a guarantor from liability.

## C. The Effect of the Guaranty Agreement

If we simply applied the general rule to the facts of this case, we could reach no other conclusion than that reached by the district court: Mazur's choice to pursue forfeiture and discharge the buyer, EBIS, also discharged the Youngs as guarantors. We cannot, however, simply apply the general rule. Instead, we must first consider whether the guaranty contract altered the default relationship of the parties. *See First Nat'l Bank of Ypsilanti v. Redford Chevrolet Co.*, 258 N.W. 221, 223 (Mich. 1935) ("In construing a contract of guaranty, the intention of the parties should govern. Where the language of the writing is not ambiguous the construction is a question of law for the court, on a consideration of the entire instrument." (internal quotation marks omitted)). Although we look to the language of the contract, we will not read expansively a guaranty contract. *See Bandit Indus., Inc. v. Hobbs Int'l, Inc.*, 620 N.W.2d 531, 535 (Mich. 2001) ("[T]he courts will not assume such an obligation [to take on another's debts] in the absence of a clearly expressed intention to do so.").

Mazur asserts that the guaranty contract overrides the default contract rules. First, Mazur argues that "[a] 'guaranty' is by its very nature a separate and distinct obligation" under which the Youngs remained liable for EBIS's default under the land contract, despite the fact that EBIS was no longer liable under the land contract. Appellant's Reply Br. at 5. Second, Mazur argues that even if the guaranty agreement does not create continuing liability by its own independent existence, the Youngs accepted liability above and beyond that of a normal guarantor and agreed to remain bound regardless of what happened to EBIS.

We conclude that these arguments are without merit.

### 1. A Guaranty Agreement's Continuing Liability

Mazur argues that a guaranty is a separate obligation, distinct from the land contract, and the guarantor thus remains liable under the guaranty regardless of the principal's liability under the land contract. If this were true, then our default rule would not be much of a default rule at all; the

guaranty agreement would leave the guarantor responsible for any deficiency regardless of the remedy the seller elects. That is not to say that Mazur's assertion is totally inaccurate, because a guaranty is "'an *independent, collateral agreement* by which [the guarantor] undertakes to pay the obligation if the primary payor fails to do so.'" *First Nat'l Bank & Trust Co. of Ann Arbor v. Dolph*, 283 N.W. 35, 37-38 (Mich. 1938) (quoting *Bedford v. Kelley*, 139 N.W. 250, 252 (Mich. 1913)) (emphasis added). Furthermore, Mazur is correct that we have observed that "[t]he guaranty is an obligation separate from the mortgage note" and concluded that, under Michigan law, a creditor may simultaneously proceed against a guarantor and foreclose on a mortgaged property. *Leslie*, 421 F.2d at 766.

Mazur's argument fails because of an important difference between *Leslie* and the instant case: *Leslie* was decided in the context of a foreclosure action, not a forfeiture action. That a guaranty agreement is an independent, collateral agreement is what allows a seller to proceed against a guarantor without having first exhausted the foreclosure remedy against the buyer. Allowing a seller to proceed against a guarantor in the foreclosure context is simply expeditious, because the guarantor will still be liable for any deficiency that remains after foreclosure—something that is not true following forfeiture. *See Cote*, 546 N.W.2d at 249 n.4.

Although not raised by Mazur, Judge Shadur's dissent makes a compelling argument that a recent, unpublished opinion of the Court of Appeals of Michigan holds that a guaranty contract provides an independent basis for liability even after a forfeiture action. In *Richard v. 380 Fair Assocs., Inc.*, No. 268299, 2006 WL 2355096 (Mich. Ct. App. Aug. 15, 2006) (unpublished opinion), the court held that § 5750, which bars collection of a deficiency from a buyer after forfeiture, was no defense for a guarantor because the plaintiff's claims arose under the "the wholly separate and discrete *guaranty contract*" and was not for "money payments due or in arrears under *the [land] contract*" that are barred by § 5750. *Id.* at *3 (quoting MICH. COMP. LAWS § 600.5750).

We conclude that *Richard* is distinguishable from the case at hand. In *Richard*, the seller was seeking money from the guarantor due to the plaintiff under a "pocket" consent judgment that the buyer and seller agreed to during the forfeiture action. *Id*. at *1. Accordingly, § 5750 would not have protected the *buyer*, let alone the guarantor, because "that liability arose out of the forfeiture proceeding, rather than a separate, subsequent action for amounts due under the land contract." *Id.* at *4. Because of the nature of the consent judgment, *Richard* was actually more like a foreclosure action in that liability continued for the buyer even after the seller received judgment for possession after forfeiture. In Mazur's case, however, there is no dispute that § 5750 would be a defense for EBIS. Thus, while *Richard* asked whether a guarantor is liable when the buyer is also still liable, we face the much different question of whether a guarantor is liable when the buyer has been discharged of all liability. In any event, *Richard* is an unpublished decision, which is not binding under Michigan Court Rules. *See* MICH. CT. R. 7.215(C)(1).

We conclude that, although a guaranty agreement is an independent contract, that fact alone does not create liability for the guarantor after the buyer is discharged.

## 2. The Youngs' Obligations Under This Guaranty Agreement

The guarantor, through explicit language in the guaranty agreement, can assume additional and lasting obligations to the seller that continue past forfeiture. *See Davis v. Yellow Mfg. Acceptance Corp.*, 242 F.2d 503, 505 (6th Cir. 1957) (applying Michigan law and concluding that the appellant was not released from an obligation by discharge of the principal because the obligation was "independent of and additional to his guarantee of the buyer's performance of the conditional sale contract"). The question before us, and the locus of our principal disagreement with Judge Shadur, is whether the Youngs assumed such a lasting obligation. We conclude that they did not.

At issue is Paragraph D of the guaranty agreement.  The relevant portion of Paragraph D reads:

> The undersigned's obligations hereunder shall remain fully binding although Seller may have waived one or more defaults by Buyer, extended the term of performance by Buyer, released, returned or misapplied other collateral at any time given as additional security (including other guarantees), and/or released Buyer from the performance of its obligations under such Land Contract.

J.A. at 18 (Guaranty ¶ D).  If forfeiture is simply a fancy word for "release," then Paragraph D would apply and would trump the default contract rules; that would leave the Youngs liable to Mazur despite the release of EBIS.  It is our determination, however, that forfeiture did far more than simply *release* EBIS from the performance of its obligations under the land contract; forfeiture *extinguished* the land contract altogether, meaning that the Youngs as guarantors cannot be held liable for damages due to breach of the now-extinguished contract.

As discussed earlier, when a seller elects to seek forfeiture under Michigan law, the seller retakes possession of the property as full satisfaction for the debt and no further obligations remain on either side.  Thus, "[f]undamentally, forfeiture is rescission."[2] *Orzechowski v. Kolodziejski*, 275 N.W. 722, 722 (Mich. 1937).  At the conclusion of a summary proceeding for possession after forfeiture, the seller recovers possession of the land, and the contract is effectively rescinded.  There can be no liability for breach of contract under a contract that has been rescinded.[3] *See* RESTATEMENT (SECOND) OF CONTRACTS § 283.  In other words, forfeiture is a full and complete remedy.  *Cote*, 546 N.W.2d at 249 n.4.

Mazur has not identified any precedent to the contrary.  In *United States v. Beardslee*, 562 F.2d 1016 (6th Cir. 1977), *cert. denied*, 439 U.S. 833 (1978), and *Leslie*, we considered the liabilities of guarantors in the context of foreclosure actions, not forfeiture actions, *see Beardslee*, 562 F.2d at 1018; *Leslie*, 421 F.2d at 766, which, as explained above, is a dispositive distinction.  In *Davis*, we concluded that the contract at issue in that case, unlike the contract at issue here, in "clear terms imposed an obligation upon the appellant" beyond a guaranty, specifically "to repurchase the trucks in the event of default by the buyer and repossession by the seller." *Davis*, 242 F.2d at 505.  Because we determine Paragraph D to be inapplicable, the general rule applies, and the guarantor cannot be liable for a principal's breach of a contract that has been rescinded.

Judge Shadur, in his dissent, claims that our reading of Paragraph D essentially renders Paragraphs A and B as dead letter.[4]  He claims that we are erroneously reading Paragraphs A and

---

[2] As observed by the Michigan Court of Appeals in a recent unpublished opinion, forfeiture and rescission are not identical.  "'Forfeiture terminates an existing contract without restitution, while a rescission of such contract terminates it with restitution and restores the parties to their original status.'" *Geno Enters., Inc. v. Newstar Energy USA, Inc.*, No. 232777, 2003 WL 21299926, at *5 (Mich. Ct. App. June 5, 2003) (unpublished opinion) (quoting 17B C.J.S. *Contracts* § 450).  Forfeiture is *more* favorable to the seller than rescission because the seller is not required to return to the buyer the payments the buyer already made.  Therefore, any distinction between forfeiture and rescission is immaterial to this case because rescission offers no additional benefits to the seller.

[3] The buyer may still be liable for other damages, "[e].g., the reasonable rental value of the property during the time that the vendee remained in possession or damages for waste." *Cote*, 546 N.W.2d at 249 n.3 (citation omitted).  Mazur claims only damages arising from EBIS's alleged breach of contract.

[4] The relevant portions of Paragraphs A and B are:
A.    The undersigned, in consideration of and to induce the Seller to enter into said Land Contract with the Buyer, does hereby unconditionally guarantee to Seller the full and complete performance of all of the Buyer's covenants and obligations under such Land Contract to the

B as establishing the guarantor's obligations post-forfeiture. He is only partly correct; while we do conclude that a guarantor has no obligations post-forfeiture, we read Paragraphs A and B to establish obligations post-remedy. We need not adopt a pre-forfeiture reading of Paragraphs A and B for them to have meaning, as they will have effect when the seller opts for release or foreclosure instead of forfeiture. Therefore, Paragraphs A and B are quite forceful and intact—but they apply only when the seller has elected a remedy that is less than a full and complete remedy.

The inapplicability of Paragraph D is further evident from a plain reading of its terms. Paragraph D maintains the guarantor's liability when the seller releases the buyer "from the performance of *its obligations* under such Land Contract." J.A. at 18 (emphasis added) (Guaranty ¶ D). From the moment that EBIS and Mazur executed the land contract, EBIS held title over the property. Thus, a simple release of the buyer from its obligations would merely allow EBIS to stop paying while retaining title over the property. Forfeiture, in contrast, is far more than a simple release from obligations.

Judge Shadur concludes—indeed, it is necessary for his argument to succeed—that the Youngs "undert[ook] a greater liability than the buyer under the Land Contract." Dissent at 12. We respectfully disagree. Paragraph A, by a plain reading, says the exact opposite: "[The guarantor] does hereby unconditionally guarantee to Seller the full and complete performance of all of the Buyer's covenants and obligations under such Land Contract *to the same extent and with the same force and effect as though the undersigned was the primary debtor* under the Land Contract." J.A. at 18 (emphasis added) (Guaranty ¶ A). In light of Michigan's precedent establishing that guaranty contracts shall be read narrowly and by only their plain meaning, *Bandit Indus.*, 620 N.W.2d at 535 (declaring that courts should "apply the principle of strict interpretation to the construction of [a guaranty] contract"); *Dillon v. DeNooyer Chevrolet Geo*, 550 N.W.2d 846, 848 (Mich. Ct. App. 1996) ("Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided."), we cannot conclude that the Youngs' guaranty contract created any additional liability that would survive forfeiture.

## D. Consent

Although a judgment for possession after forfeiture normally discharges a guarantor from liability for a principal's breach of a land contract, a guarantor might not be discharged if the guarantor consents to the discharge of the principal debtor. *See Wilson Leasing Co.*, 220 N.W.2d at 88-89 ("Any material alteration of a principal debt or obligation operates to completely discharge any guaranty of that debt or obligation, *unless the guarantor consented to the alteration*." (citations omitted) (emphasis added)). Mazur argues that the Youngs accepted additional liability because they consented to the discharge of EBIS. Mazur asserts that the same attorney represented EBIS and the Youngs in the state-court forfeiture action.[5] The consent judgment for possession after forfeiture was signed by that attorney, so Mazur argues that, because an attorney representing both EBIS and the Youngs signed the consent judgment, the Youngs consented to the discharge of EBIS as the

---

same extent and with the same force and effect as though the undersigned was the primary debtor under the Land Contract. The liability hereunder of the undersigned to Seller shall be direct and absolute, and shall not be conditional upon the pursuit by Seller of whatsoever remedies that may at any time be available to Seller against Buyer.

B.   By way of illustration, but without limitation, the undersigned hereby unconditionally guarantees to Seller the full and timely payment of the rent and all other charges to be paid by Buyer pursuant to the provisions of said Land Contract . . . .

J.A. at 18.

[5] The Joint Appendix does not contain a record of an appearance by an attorney on behalf of EBIS and the Youngs in the state-court forfeiture action, but does contain the answer filed on behalf of both EBIS and the Youngs, which reflects that one law firm was representing all defendants.

principal debtor. The judgment, however, listed only EBIS as a defendant, and the Youngs were later dismissed as defendants due to lack of progress in the case.

We need not resolve the question of whether the Youngs consented. The consent judgment at issue was a judgment for possession after *forfeiture*, which effectively rescinded the contract. Thus, the most that can be said is that the Youngs consented to forfeiture of the contract, which, as explained above, extinguished any liability of both EBIS and the Youngs for damages for breach of the land contract. It would be bizarre to construe the consent judgment as both extinguishing the Youngs' liability and simultaneously acting as consent for greater liability.

## III. FAIRNESS

The soundness of our conclusion that a judgment for possession after forfeiture extinguishes a guarantor's liability is underscored by considerations of fairness. Judge Shadur suggests that today's decision is inherently unfair to Mazur, who accommodated the Youngs by agreeing to let them interpose EBIS between Mazur and the Youngs for liability-evading purposes. Mazur, however, does not lose because of the corporate structure the Youngs used; rather, Mazur loses because he made a choice of remedy that he now regrets. Had Mazur opted instead to use foreclosure, it would not have mattered whether EBIS or the Youngs signed the land contract, because both parties would still be liable for any deficiency.

Judge Shadur would prefer that we allow a seller to pursue forfeiture and then, if the seller cannot find a buyer willing to pay enough, allow the seller to seek damages for the deficiency. To do this would be to give Mazur a third type of remedy: "foreclosure plus." This new remedy would allow the seller to play the market. Just like forfeiture, the seller could keep the property, and if the value increases the seller could keep the surplus. And just like foreclosure, if the value declines the seller could seek the remainder from the buyer or guarantor. Creating this new remedy would contradict Michigan law: "A land contract seller may not take possession of the property and attempt to sell it and, if unable to do so, seek then to foreclose." *Gruskin v. Fisher*, 273 N.W.2d 893, 901 (Mich. 1979).

Furthermore, the dissent's conclusion that a guarantor is still liable following judgment for possession after forfeiture would create an opportunity for sellers to take advantage of unsophisticated guarantors. Such a rule would leave parents, relatives, and other unsophisticated guarantors with a surprising liability, even when the seller chooses not to pursue foreclosure, and even when the buyer returns the property and relinquishes any claim to payments already made under the land contract. Under such a rule, the guarantors would still be liable if the seller was unsatisfied with a later sale of the property—even if the sale was years later. Instead, we conclude that, should sellers wish to establish such lasting and pervasive liability, they cannot claim that it exists as a default, but must instead explicitly negotiate it with the buyers and the guarantors.

## IV. CONCLUSION

Because we conclude as explained above that the district court was correct in granting summary judgment, we need not address the district court's alternate ruling that Mazur's claim was barred by the statute of limitations applicable to breach-of-contract claims. Accordingly, we **AFFIRM** the district court's grant of summary judgment.

———————————

## DISSENT

———————————

SHADUR, District Judge, dissenting. With regret, I believe that the majority opinion has mistakenly looked to a generalized legal doctrine as somehow overriding the specific language of the contract between the parties--a near-classic exaltation of form over substance. Because there is of course no contention that the guaranty executed by Roi and Dyan Young ("Youngs") is somehow contrary to public policy so as to render it unenforceable, I submit that no basis exists for such a failure to hold Youngs to the unambiguous language of their commitment under the guaranty. Hence I respectfully dissent.

Most troubling is that, as the majority opinion would have it, not all of the expressly-bargained-for provisions in the binding guaranty contract between Mazur and the Youngs are given effect. That result is particularly problematic, given the long-held principles that govern the interpretation of such a contract, under which the general rules of contract construction must be applied (*First Nat'l Bank v. Redford Chevrolet Corp.*, 258 N.W. 221, 223 (Mich. 1935)). As was explained there, quoting even earlier caselaw:

> In construing a contract of guaranty the intention of the parties should govern. Where the language of the writing is not ambiguous the construction is a question of law for the court, on a consideration of the entire instrument.

For that purpose, of course, "the courts will not assume such an obligation [to assume another's debts] in the absence of a clearly expressed intention to do so" (*Bandit Indus., Inc. v. Hobbs*, 620 N.W.2d 531, 535 (Mich. 2001)).

But before parsing out the terms of the guaranty contract that should be given their full force, it is critical to look at Mazur's position vis-a-vis Equitable Benefit. It is undisputed that under Michigan law a land contract vendor who finds himself in Mazur's position, confronting a purchaser in default, must choose between two enforcement options against the purchaser: (1) foreclose on the contract, sell the property and, after applying the proceeds, proceed against the purchaser for any deficiency (Mich. Comp. Laws §§600.3101 - 600.3180)[1] or (2) commence a summary proceeding in the district court for forfeiture of the land contract, obtain possession of the property and retain all payments made to date (Section §600.5744). That second alternative brings into play Section 600.5750:

> The remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory. A judgment for possession under this chapter does not merge or bar any other claim for relief, except that a judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial and that a judgment for possession after forfeiture of such an executory contract which results in the issuance of a writ of restitution shall also bar any claim for money payments which would have become due under the contract subsequent to the time of issuance of the writ.

———————————

[1] Further citations to the Michigan statutes will take the form "Section --," omitting the prefatory "Mich. Comp. Laws."

And that, of course, meant that Mazur's pursuit of that remedy let Equitable Benefit off the hook for any monetary liability, whether past or future. According to the majority opinion, letting Equitable Benefit off the hook also released the Youngs from any further obligation under the generalized theory that a land contract vendor in Mazur's position must elect his remedies, in spite of the fact that the parties here--Mazur and the Youngs--had clearly and unambiguously expressed their contrary intentions vis-a-vis each other in the language of their separate and enforceable guaranty contract.

As the Michigan Court of Appeals rearticulated last year in *Richard v. 380 Fair Assocs., Inc.*, No. 268299, 2006 WL 2355096, at *3 (Mich. App. Aug. 15)(per curiam), quoting from *Mich. Nat'l Bank v. Cote*, 546 N.W.2d 247, 249 n.1 (Mich. 1996), but with brackets inserted by the *Richard* opinion:

> Section 5750 is, "in effect, a [modified] codification...of the common-law rule that the forfeiture of an executory contract for purchase of land constitutes an election of remedies, precluding the vendor from later seeking damages for breach of contract."

Like the guarantor in *Richard*, the Youngs contend that Mazur's claim under their guaranty constitutes a "claim for money payments due or in arrears under the contract at the time of trial" as contemplated by Section 5750, so that Mazur's claim under the guaranty was barred by his election to pursue forfeiture proceedings against the land contract purchaser.

But like the guarantor in *Richard*, the Youngs are wrong. To find in favor of the Youngs, both the district court and the majority opinions impermissibly conflate the Land Contract and the guaranty contract. As was held to be the case in *Richard*, Mazur's claim against the Youngs stems from their obligations under the quite separate (albeit related) guaranty contract and "thus is simply not a post-forfeiture claim for 'money payments due or in arrears *under the [land] contract*'" (*Richard*, 2006 WL 2355096, at *3, quoting Section §5750). And as *United States v. Leslie*, 421 F.2d 763, 766 (6th Cir. 1970) has emphasized in the similar context of a guaranteed mortgage, "[t]he guaranty is an obligation separate from the mortgage note....[T]he obligation of guaranty is distinct from the debt" under the mortgage.

It should be remembered that the Youngs were not themselves parties to the Land Contract. But they expressly entered into the *separate* guaranty contract, under which they obligated themselves to "unconditionally guarantee to Seller the full and complete performance of all of the Buyer's covenants and obligations under such Land Contract."

Indeed, there is a special irony--or perhaps a special degree of nerviness--in the Youngs' effort to take advantage of a release of their corporation from liability to benefit themselves personally. After all, the original transaction was structured as it was solely at their behest, not Mazur's, because they wanted to shoehorn Equitable Benefit into the picture to insulate themselves against potential personal liability to unknown future litigants by not taking title in their own names. Mazur accommodated their desire and now faces their effort to avoid liability *to him*. Truly no good deed goes unpunished.

What seems more remarkable is the refusal of the Youngs (and regrettably the failure of both the district court and the majority) to parse the Guaranty of Land Contract to see the basic illogic of the Youngs' position. Here are Paragraph A and the opening sentence of Paragraph B of that guaranty contract:

A.　　The undersigned, in consideration of and to induce the Seller to enter into said Land Contract with the Buyer, does hereby unconditionally guarantee to Seller the full and complete performance of all of the Buyer's covenants and obligations under such Land Contract to the same extent and with the same force and effect as though the undersigned was the primary

debtor under the Land Contract. The liability hereunder of the undersigned to Seller shall be direct and absolute, and shall not be conditional upon the pursuit by Seller of whatsoever remedies that may at any time be available to Seller against Buyer.

B.    By way of illustration, but without limitation, the undersigned hereby unconditionally guarantees to Seller the full and timely payment of the rent and all other charges to be paid by Buyer pursuant to the provisions of said Land Contract.

As the Youngs would have it, the forfeiture proceeding meant that the Buyer (Equitable Benefit) no longer had any obligation to make any payments or perform any other Land Contract obligations (true enough), but they then go on to contend that result deprives the quoted language from Paragraphs A and B of any further force.

But that position begs the question, for it rests on a premise that the guaranty language of Paragraphs A and B speaks in terms of the Buyer's obligations--or lack of obligations--*post* forfeiture. And that premise is of course false, because it is flatly contradicted by this provision of Paragraph D of the Guaranty that expressly provides for the Youngs' continuing obligations (emphasis added):

> *The undersigned's obligations hereunder shall remain fully binding although Seller may have* waived one or more defaults by Buyer, extended the term of performance by Buyer, released, returned or misapplied other collateral at any time given as additional security (including other guarantees), and/or *released Buyer from the performance of its obligations under such Land Contract.*

Once the Seller has so *released* the Buyer, by definition the latter no longer has any Land Contract obligations--so what obligations of the Guarantor can then "remain fully binding"? In the Youngs' (and the majority's) eyes, none. But that would render meaningless the guaranty provisions of Paragraphs A and B. It is obvious, then, that those latter provisions speak of what the Buyer's obligations *originally* were under the Land Contract itself, unaffected by the later release of the Buyer that Paragraph D says does not diminish the Guarantor's obligations. And that identical meaning of Paragraphs A and B plainly applies to a release of the Buyer through a forfeiture proceeding, just as it does to any other release.

In that respect the majority seeks to perform a feat worthy of a conjurer--but not, I submit, of persuasive legal analysis. It begins innocently enough by identifying a "default rule": a proposition that by definition (and as the label expressly denotes) operates only in the *absence* of an agreement between the parties. But then having done so, it impermissibly proceeds to use the "default rule"--which, it will be remembered, operates only in a contractual vacuum--to trump the clear meaning and thrust of the agreement that the parties *have* arrived at. To me that attempted transmutation is somewhat reminiscent of the imaginary "philosophers' stone" by which the alchemists of the Middle Ages hoped to transmute base metal into gold.

In fact, the distinction set out in this dissent is directly fortified by a look at what the earlier-quoted forfeiture statute--Section 600.5750--says and what it does not say. It says that a post-forfeiture judgment for possession or writ of restitution bars claims for money payments "under the contract" (the Land Contract)--claims that by definition could be made *only* against the party to that contract (here Equitable Benefit). It says nothing to negate claims against a third party (here the Youngs in their capacity as guarantors under a separate contract) who can choose, as the Youngs have, to undertake a greater liability than the buyer under the Land Contract. Neither the principles of statutory construction nor the principles of construing contracts permit a Procrustean alteration of the statute and guaranty contract to read them in a way that terminates that fundamental distinction.

This interaction of Mazur's two separate contracts--the Land Contract with Equitable Benefit as Buyer and the Guaranty of Land Contract with the Youngs as guarantors--contrasts sharply with the situation in *VanElsacker v. Erzberger*, 357 N.W.2d 891, 894 (Mich. App. 1984), which barred a later suit on a promissory note because the parties there had elected "to treat the promissory note and land contract as a single contractual obligation in the summary proceedings for forfeiture and restitution." Here, however, Section 600.5750 clearly supports the outcome under which Mazur may pursue the Youngs for damages based on the separate and independent guaranty contract, because it expressly states that the summary proceedings remedy "is in addition to, and not exclusive of, other remedies, either legal, equitable or statutory." To the same effect, Paragraph A of the guaranty (emphasis added) specifically provides that the Youngs' liability "shall be direct and absolute, and *shall not be conditional* upon the pursuit by Seller of whatsoever remedies that may at any time be available to Seller against Buyer."

### Statute of Limitations

That, then, calls for rejection of the district court's decision and the majority's affirmance in substantive terms, but I pause to address what had been the district court's alternative ruling that Mazur's claim was barred by Michigan's six-year statute of limitations applicable to breach of contract claims--a period that begins to run as soon as the cause of action accrues (see Section 600.5807(8)). *Cordova Chem. Co. v. Dep't of Natural Resources*, 536 N.W.2d 860, 865 (Mich. App. 1995) explains that a breach of contract claim "accrues when the promissor fails to perform under the contract" (accord, such cases as *H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 595 N.W.2d 176, 183 (Mich. App. 1999)). Mazur contends that his claim against the Youngs accrued either (1) on March 26, 2002, when the post-forfeiture sale to Fisher was completed and Mazur learned the extent of his damages, or (2) when the instant lawsuit was filed in October 2004, while the Youngs urge that Mazur's claim accrued in June 1997, when they stopped making payments under the Land Contract.

Agreeing with the Youngs, the district court held that "there can be no question that Mazur's claim accrued when [Equitable Benefit] defaulted on its monthly land contract payments and the guarantors failed to cure that default." In taking that view that the breach occurred when Equitable Benefit defaulted on the Land Contract payments in 1997 because that event assertedly triggered the Youngs' obligation under the guaranty agreement, the district court further held that Mazur's 2004 lawsuit was time barred.

Again I respectfully disagree. *United States v. Brown*, 833 F.Supp. 625, 628 (E.D. Mich. 1993), discussing a similar cause of action arising under identical federal law, stated that "[t]he point at which plaintiff's cause of action accrued is governed by the language of the guaranties," and it held the cause of action against the guarantor did not accrue until the obligee had made a demand on the guarantor. Just so, in addition to the language quoted earlier from Paragraph B of the guaranty agreement, the same paragraph goes on to state (emphasis added):

> The undersigned shall pay such indebtedness to Seller *on demand* inasmuch as the undersigned hereby agrees that such indebtedness constitutes the undersigned's direct and primary obligation; and Seller shall not be obligated to first resort to any actions or remedies against the Buyer before proceeding against and collecting from the undersigned, or any of them.

As stated earlier, Michigan courts have long held that guaranty contracts are subject to the same rules of interpretation and construction as any other contracts (see *First Nat'l Bank*, 258 N.W. at 223). And here it is undisputed that Mazur did *not* demand payment from the Youngs when Equitable Benefit stopped honoring its obligations in 1997.

As above, the district court's and majority's holding that the guaranty contract was breached back in 1997 has impermissibly conflated the Youngs' obligations under the guaranty agreement with Equitable Benefit's obligations under the Land Contract. *Diversified Fin. Sys. v. Schanhals*, 513 N.W.2d 210, 211 (Mich. App. 1994) (per curiam) teaches that a guaranty is breached and the statute of limitations starts to run only when a demand is made to enforce the terms of the guaranty contract. Thus *Diversified*, *id.* held that "[d]efendants were in breach of the guaranty contracts when...[plaintiff] brought suit...to enforce the guaranty contracts."

And that approach makes eminently good sense. It allows the obligee to forbear pursuit of the guarantor until he knows (1) that he has ultimately sustained damages as a result of the underlying breach or breaches and (2) what the extent of those damages has turned out to be.[2] In this instance Mazur's pursuit of the forfeiture alternative, with its swifter entitlement to possession than foreclosure of the Land Contract would have provided, enabled Mazur to seek a new buyer at a favorable price (Mazur had actually listed the property for sale not long after Equitable Benefit stopped making payments under the Land Contract), and one offer was received but the deal fell through. Needless to say, Mazur (like any rational person in the same position) was looking to recoup his money (or to limit his mortgage obligation) rather than simply acquiring a cause of action--and if he had been successful in obtaining a favorable sale price as he sought to do, he would have sustained no damages and the Youngs would have had no liability as guarantors (for of course Mazur was not entitled to a double recovery).

In fact, even under the Youngs' approach, when reasonably assessed, Mazur's October 19, 2004 lawsuit was not a stale claim for limitations purposes. Six years earlier (on October 19, 1998) Mazur had listed the property for sale but had not yet obtained possession through forfeiture proceedings. It was not then known whether he would in fact sustain damages by reason of Equitable Benefits' defaults--damages that Paragraph B of the guaranty would have obligated the Youngs to pay "forthwith."

In short, the Youngs' limitations defense, like their substantive contention, fails as a matter of law. And that being so, I cannot join the majority opinion upholding the district court's decision, which fails to take into account the parties' intentions under the guaranty contract. As stated at the outset, I respectfully dissent.

---

[2] As is true of the typical guaranty document, the Guaranty of Land Contract here is chock full of provisions that protect the remedies of the party guaranteed against breaches of the underlying obligor without stating when or how he must pursue any of those remedies. What the text reflects is the most logical answer to that question.